## WILLIAM STONECIFER, Respondent, *v.* THE YELLOW JACKET SILVER MINING CO., Appellant.

The doctrine that he who buys land with a full knowledge that there is a pre-existing contract in regard to the sale of the same, will be held in equity to carry out that contract, has no application to a case where the party seeking the equitable relief never was entitled to a conveyance from the party with whom he contracted, and when that party never in fact had any title to convey.

Where A claims an interest in a piece of real estate, and being out of possession conveys his alleged interest to B, for the purpose of enabling him to prosecute a suit for the same, with an agreement on the part of B to reconvey a portion of the property, if recovered, B has full power to compromise the suit, even without the consent of A, and the title would be established by a judgment and deed, in pursuance of such compromise. A might be entitled to an action against B for damages, but would have no claim on the land. If A consented to the compromise made by B, certainly a third party having a contract with A for the conveyance of a portion of his contingent interest, would not be allowed to question the title of the parties in possession who compromised with A and B, and obtained a deed for whatever title B had.

On Rehearing.—When A takes a conveyance for land in the adverse possession of another, with an agreement, in case of recovery, to convey part of the land recovered to B, can he be considered a trustee for B until the recovery is had?

Where a party who is prosecuting a suit for the recovery of land covenants, in case of recovery to convey a part of the land recovered to another, and afterwards compromises the suit so as to prevent the possibility of recovery, he may be liable to his covenantee in damages, but the party in possession, who compromises the suit, is not affected by the previous existence of this covenant.

If the compromise had been fraudulently entered into by both parties, with a view of cheating the covenantee, then a Court of Equity might have given relief.

A party in possession always has a right to buy his peace from one asserting an adverse claim, and such compromises will always be upheld where there is no fraud committed.

A party who has covenanted to convey, in the event of recovery, may be under obligation not to compromise the case so as to prevent the possibility of recovery. But no such obligation rests on defendant: he has a perfect right to buy his peace, regardless of all contracts between his opponent and others.

The Court cannot, in an equitable proceeding, try the title to land, nor determine in such a case what should have been the judgment in an action of ejectment formerly pending in regard to the same.

A party being in possession, claiming title, cannot be divested of that possession without a trial at law before a common law Court and a jury.

APPEAL from the District Court of the First Judicial District, the Hon. RICHARD S. MESICK, presiding.

The facts of the case are fully stated in the opinion.

*Hillyer & Whitman* made the following points for the Appellant:

The Court below should have sustained the demurrer to the complaint, for it shows no cause of action.

A specific performance of a contract can only be decreed where such contract is binding at law. (Adams' Equity, p. 77.)

In this case the agreement of Jones, set forth in the complaint, was void for want of consideration. It depended on contingencies which never happened. There was no mutuality of contract between Jones and Stonecifer — contract must be mutual to have specific performance. (*Benedict* v. *Lynch*, 1 John. Ch. 370; *German* v. *Machin*, 6 Paige, 288; *Woodward* v. *Harris et al.*, 2 Barb. 439; *Rogers* v. *Saunders*, 4 Maine, 92; *Boucher* v. *Van Buskirk*, 2 A. K. Marshall, 346; Adams' Equity, 3d Ed., p. 252, foot-note and cases there cited; *Cooper* v. *Pena*, 21 Cal. 404.)

The agreement of Osborne, as set forth in the complaint, was void, not being in writing.

The complaint shows that defendant is a corporation. It is not within the scope of the powers of a corporation, formed under the Statutes of Nevada, to perform the act demanded by plaintiff. The complaint shows no special case of hardship, nor any reason why plaintiff could not be compensated in damages.

It shows no cause of action against defendant.

For the same reasons, the judgment of the Court was against law.

It was contrary to the evidence. Jones' evidence shows that he never made any claim to a quartz lead.

The record of the agreement set forth in the complaint was no notice to defendant.

No actual notice was proven. If defendant would have been liable in case of notice, without such notice there was no liability.

The Court erred in the judgment. If defendant was liable, it was only liable to perform the contract of Jones. The Court has decreed none.

*Hundley & Mitchell*, for Respondent, made the following points :

1. Defendant being a purchaser with notice of plaintiff's contract, will be decreed to convey. (1 Story Eq. Jurisprudence, 754, Sec. 784 ; also, Sec. 395 ; *Champion* v. *Brown*, 6 John. Ch. Rep. 402 ; *Potter* v. *Sanders*, 6 Hare Rep. 1 ; 31 Maine Rep. 89 ; 3 Leading Cases in Equity, 91 ; *McMorris* v. *Crawford*, 15 Ala. Rep. 271 ; *Dickinson* v. *Aug*, 25 Ala. Rep. 424 ; *Wiswall* v. *McGowan*, 1 Hoffman, 125.)

2. A purchaser of real estate is liable to all equities of which he has actual or constructive notice. (2 Leading Cases in Equity, 182 ; 8 Wheaton, 421 ; 9 Peters, 86 ; 2 B. Monroe, 105 ; 4 Blackford, 583 ; 1 Johnson Ch. Rep. 566 ; 2 Id. 300 ; 2 McCord, 149 ; 5 Barbour S. C. 534 ; 1 Yerger, 29 ; 1 J. J. Marshall, 403.)

3. The defendant had knowledge of the Jones and Stonecifer contract ; it was recorded. (Laws of 1861, pp. 14 and 15, Secs. 24–25.)

4. Plaintiff and defendant claim from a common source ; it is estopped from disputing such source of title or its validity.

5. If defendant claimed under a superior title to the common source, he must plead such title, and if not pleaded he is estopped from denying the validity of the common title. (13 Smede & Marshall's Rep. 103–109; 11 Smede & Marshall, 327; 3 Smede & Marshall, 114.)

6. Plaintiff shows that the nonperformance of covenants was excused. That defendant prevented the performance or rendered it unnecessary. (1 Chitty Pr. and Pl. 325, also 320; 2 Smith's Leading Cases, 44, and authorities cited; *Newcomb* v. *Bracket*, 16 Mass. Rep. 161; *Webster* v. *Coffin*, 14 Mass. Rep. 196; *Clark* v. *Moody*, 17 Mass. Rep. 149.)

A failure or want of consideration cannot be given in evidence, or be pleaded as against a specialty. (2 Johnson Rep. 177; 13 Id. 430; 5 Cowen Rep. 506; 8 Id. 290; 21 Wendell Rep. 626; 21 Cal. Rep. 47.)

A complaint on a sealed instrument need not aver a consideration, because a consideration need not, in the first instance, be proved. (1 Van Sandfordt Pr. and Pl. 221; *Livingston* v. *Tremper*, 4 Johnson Rep. 416.)

The complaint avers consideration, which is not denied by defendant.

The Court will only consider in this case the judgment roll. There are no findings of the Court below, and defendant has not taken the exceptions required by statute. (Laws of 1865, p. 394.)

*Haydon & Denson*, for Respondent, also filed a brief in support of the foregoing points.

*Mitchell & Hundley*, in their petition for rehearing, sum up the points on which they rely, as follows:

" First.—As the case was decided upon demurrer, all the facts stated in the complaint were admitted to be true.

Second.—The facts as shown by the complaint.

Third.—That the facts as disclosed made J. A. Osborne, as to the seventy feet, a trustee for Jones, and that their relation as to that interest was that of a trustee and *cestui que trust*.

Fourth.—That as to this seventy feet, the relation the parties bore to it was that Osborne was legal owner, and Jones an equitable owner.

Fifth.—That the interest which Jones held in this seventy feet was the subject of sale by him, or liable to be disposed of by operation of law *in invitum*.

4

Sixth.—That respondent took the same interest that Jones had prior to the assignment of the ten feet.

Seventh.—That the effect of the contract between Jones and respondent, *in equity*, was an assignment of his interest in the ten feet.

Eighth.—That Osborne, after the assignment from Jones to respondent, occupied to respondent the same position he did to Jones prior to that time.

Ninth.—That no acts of a trustee can prejudice the rights of a *cestui que trust*, with knowledge upon the part of the person dealing with him that he is a trustee.

Tenth.—That Osborne, or his administrator, could not sell or compromise any greater interest than he had: as he held the estate in trust, he sold and conveyed to defendant (it being affected with notice) the trust estate subject to the trust in its hands, the same as it was in Osborne's.

Eleventh.—That the defendant purchased the *whole property* with notice of this trust, and they must now execute it.

Twelfth.—That the deed from Jones to defendant did convey his equity in seventy feet to the defendant.

Thirteenth.—That plaintiff did have two remedies—one against Jones for damages, and the defendant for a specific performance—it having purchased with notice."

Opinion by BEATTY, C. J., BROSNAN, J., concurring.

The appellant, in the month of March, 1865, filed his complaint, alleging substantially the following facts:

That one Lyman Jones, on the first of May, 1859, located a certain mining claim two hundred feet square, which covers a part of the claim now occupied and worked by the defendant. That on the thirtieth of September, 1861, Jones deeded this claim to one Osborne by deed absolute on its face, but with an understanding or agreement that Osborne was to prosecute an action at law, at his own expense, for the recovery of the ground from which Jones had been ousted, and upon recovery he was to reconvey seventy feet to Jones. That on the same day, Osborne conveyed to his counsel—Smith, Clayton & Lindsey—fifty feet of the claim as a counsel fee for prose-

cuting the suit. That in March following (1862) suit was commenced against the Yellow Jacket Company (not then incorporated) for the mining claim located by Jones. In the spring of 1863, whilst this suit was still pending, Jones made a contract with the plaintiff whereby he bound himself to deed ten feet of this claim to plaintiff in the event Osborne or Osborne's administrator (for Osborne himself was dead) recovered from the Yellow Jacket Company, and conveyed to him, Jones, the seventy feet about which there was an agreement between Jones and Osborne, when the deed was made to Osborne. Shortly after this agreement was made, the suit of Osborne (or his administrator) against the Yellow Jacket Company came on for trial, and the plaintiff took a voluntary nonsuit.

In the course of that year two new suits were brought against the Yellow Jacket Company: one by Smith, Clayton & Lindsey for their fifty feet, the other by Osborne's administrator for the remaining one hundred and fifty feet. In March, 1864, both these suits were disposed of in the following manner:

On the seventh day of March, Smith, Clayton & Lindsey filed a written consent that judgment for costs might go against them.

They subsequently conveyed their interest in the mining claim to the Yellow Jacket Company. The administrator of Osborne on the ninth of March filed a like written consent that judgment might go against him for costs. He had however, previous to that day, conveyed all his interest in the mining claim to the Yellow Jacket Company.

The complaint, in speaking of this written consent on the part of Osborne's administrator that the judgment should be entered against him for costs, says: "That the consideration moving plaintiff in said cause for the filing of such written consent as aforesaid, and the entry of such judgment, was the purchase by defendant of the said Lyman Jones of his right, title and interest to said mining claim, and the purchase by said defendant from the said W. B. Hickock, administrator of the estate of J. A. Osborne, deceased, as aforesaid, of his right, title and interest in and to said claim."

Subsequent to the dismissal of the suit, Jones conveyed all right, title and interest in the claim to the Yellow Jacket Company. The

bill further charges, that when the Yellow Jacket Company took their conveyance from Osborne's administrator and from Jones, it had notice of the agreement about the ten feet between this plaintiff and Jones, and also of the Jones and Osborne agreement as to the seventy feet.

The bill concludes with a prayer that the defendant be compelled to convey ten feet undivided interest in the mining ground described; for costs, etc.  The defendant first demurred, and on the demurrer being overruled, then answered.  The case went to trial, and a decree was rendered in accordance with the prayer of the complaint.

The case should have been disposed of on demurrer, and it is therefore unnecessary to notice the answer or proof in the case. Respondents claim that they were entitled to a decree against the appellants because they took a conveyance from Jones whilst there was an existing contract, of which respondents had notice, between Jones and respondents for the conveyance of this ten feet of ground. No principle is better settled than that if A contract to sell land to B, but before consummating the sale conveys the same land to C, who has a knowledge of the preëxisting contract, C is in equity bound to fulfill that contract.

But that principle is wholly inapplicable to this case, for at least two good reasons : First, Jones never was bound to convey anything to plaintiff; and second, he never sold or conveyed anything to defendant.

Jones' contract to convey to plaintiff depended on two conditions : First, that Osborne should recover from the Yellow Jacket Company; second, that having recovered from that company, he should convey seventy feet to Jones.  Now, neither Osborne nor his administrator ever did recover from the Yellow Jacket Company, nor did they ever convey seventy feet to Jones.

Now, if Jones himself never was bound to convey, how is it possible that those holding under him (admitting there is any title held by conveyance from him) could be bound to convey by reason of the derivation of title from him?

But it may be answered that although the conditions never arose on which Jones was to convey, yet he himself became a party to

the compromise of the suit against the Yellow Jacket, and thereby prevented the happening of the contingency on which his liability to convey depended. This is all true, and we may admit that Jones thereby became liable to plaintiff in the proper form of action for whatever injury was done to plaintiff by that compromise. But in such case, the plaintiff's remedy, if any, was a pecuniary compensation for his loss. It was not by a conveyance from Jones, for Jones, after the compromise, had nothing to convey. That remedy must have been against Jones alone.

If one covenant to sell or convey land, and refuses to carry out that covenant, the covenantee has two remedies against him. One, an action at law for damages; the other, a bill for specific performance. Whilst the latter remedy may be enforced against either the original covenantor or his vendee with notice, the former can only be enforced against the original party. If, then, Jones violated his covenant by assenting to the compromise, he became personally liable; but that was a liability that could only affect him or his personal representatives in case of his death.

Again, on the other point. The suit between Osborne's administrator and the Yellow Jacket Company was compromised in February or March, 1864. The complaint avers that the administrator made a deed of all Osborne's interest in February, and by consent judgment was rendered for defendant on the 9th of March, 1864. Now if Jones ever had any interest in the mining claim, the whole of it (except what was deeded to the lawyers, and that is not here brought in question) passed to the Yellow Jacket Company by the deed of February, 1864, and the judgment of March 9th, 1864.

There was not a shadow of title or claim of any kind left to Jones. Consequently the deed which he subsequently executed was no more than a mere piece of waste paper. It conveyed nothing because he had nothing to convey.

The conveyance to Osborne by Jones was absolute on its face. It was made for the express purpose of allowing Osborne to prosecute the suit. If he had a right to prosecute the suit he had a right to compromise it. At least the Yellow Jacket had a right, in order to protect their possession, to compromise the suit with

him, and if the title passed by such compromise it would be availa-able to them.   If Osborne, in making such compromise, violated his contract with Jones, he might be personally liable, but this could not affect the Yellow Jacket Company.

If Osborne had the right to compromise the case without Jones, certainly the fact that Jones assented to the compromise could not invalidate it.

The complaint alleges in substance that he was a party to the compromise which was consummated by the entry of judgment on the ninth of March, 1864, but his deed was not made for months afterwards.   The facts stated in the complaint show no grounds of action against the Yellow Jacket Company.   The judgment of the Court below must be reversed, and the bill dismissed.   It is so ordered.

---

RESPONSE TO PETITION FOR REHEARING.

Opinion by LEWIS, J., BEATTY, C. J., concurring.

In the petition for rehearing in this case, it is urged with much earnestness by the attorneys for respondent that the conveyance from Jones to Osborne, with the contemporaneous agreement between them, raised a trust in favor of Jones ; that the relation of trustee and *cestui que trust* was thus established between them as to the seventy feet to be reconveyed.   It is then claimed that Jones, the *cestui que trust*, had the right and was possessed of the power either to convey *in presenti*, or bind himself to convey at some future day, his entire interest in the trust property, even before it was recovered from the defendant; that he did covenant to convey one-seventh of his interest to the plaintiff; that defend-ant having received a conveyance from Jones and Osborne of all their interest in the property, with notice of the trust, and of Jones' agreement to convey to the plaintiff, is bound by the trust and may be compelled to convey to him in accordance with Jones' obliga-tions.

In our opinion it is a matter of no consequence whatever to the plaintiff in this case, whether the relation of trustee and *cestui que*

*trust* existed between Osborne and Jones or not; and we are of opinion at present that no such relation did exist. The common law which prevailed in the Territory of Nevada at the time of the execution of that deed, unmodified as it was by any such statute as that which we now have, forbade the transfer of any disputed title or right, whether relating to real or personal property by the person out of possession, and made all such transfers utterly void. (4 Blackstone's Commentaries, 135 ; *Hyatt* v. *Thompson*, 3 Sanford's R. 430; Rawle on Covenants for Title, pp. 32–33.) The deed in question from Jones to Osborne was executed whilst the defendant was in open, adverse possession of the premises, and indeed it was executed for the express purpose of enabling the grantee to bring suit to recover the possession of the premises sought to be recovered. If, therefore, we should follow the rule of the common law, the deed in question would have to be treated as a nullity. Whether it was valid or not, however, is a question not necessary to be determined in this action, because it can make no difference to the plaintiff, so far as his rights in this action are concerned, whether it was void or not. It may, therefore, be left entirely out of this case without injury to him, and without any modification of his rights. Leaving Osborne out of the case, and passing over the question as to his duties and responsibilities, and Jones' rights in his character of *cestui que trust*, which are matters not necessary to be discussed in the disposition of this appeal, we have then to determine what interest or rights the plaintiff acquired by the instrument executed to him by Jones, and how those rights were affected by the conveyance and compromise which subsequently took place between Osborne, Jones and the defendant.

The learned Judge below treated the instrument from Jones to the plaintiff as an absolute obligation to convey ten feet of the Yellow Jacket ledge to the plaintiff, whilst in fact the obligation was merely contingent—depending entirely upon a recovery by Jones from the defendant. It is clear beyond all question that the plaintiff was to have nothing unless Jones' title proved to be superior to that of the Yellow Jacket Company. Hence the only interest which the plaintiff acquired by that instrument was an interest in the action of ejectment which was then pending against the defend-

ant in the District Court, than which nothing could be more uncertain or precarious. Of this the plaintiff was fully cognizant. He knew that Jones had obligated himself to convey nothing but the doubtful fruits which might be realized from a lawsuit; that he could obtain nothing except through a decision of the Courts favorable to the Jones title.

It is conceded that no such decision was ever had, that the action instituted to test the validity of that title was compromised, and that a judgment was rendered in favor of the defendant for the costs. If the failure to recover in that action was *bona fide,* and not owing to any breach of faith or unwarrantable negligence on the part of Jones, the plaintiff would have no right of action, even against him—much less against the defendant. But it is claimed Osborne and Jones prevented a recovery by the compromise of the action against the defendant, and the conveyances which they executed to it at that time; that they had not the authority or right to compromise the plaintiff's rights, or to defeat them by a conveyance of their interest in the property to the defendant. True, they had no such right; but we are fully of the opinion that the effect of the compromise and conveyances was to defeat the happening of the event upon which the plaintiff was entitled to a conveyance, and to confine his remedy to an action for damages against Jones. The legal title to whatever interest Jones or Osborne had to the mining claim having passed to the defendant by means of the conveyances executed to it, it is clear that they cannot maintain an action of ejectment against it; and as the plaintiff has a mere equity, if anything, he can maintain no such action. Hence, we conclude the event cannot transpire upon which the plaintiff was entitled to a conveyance of the ten feet of ground which he is claiming. But the defendant having been a party to the transaction by which the recovery against it was rendered impossible, can a Court of Equity for that reason treat the case as if a recovery had been had, and hold the defendant responsible accordingly? We think not. If it were shown that by fairly prosecuting an action against the defendant, Jones would probably have recovered the interest claimed by him, but instead of doing so, entered into a compromise by means of which the defendant obtained judgment, the plaintiff could

doubtless have maintained his action against him for damages. In two cases only, however, could the defendant render itself liable to have the trust forced upon it, and a specific performance decreed against it : First, by fraudulently or wrongfully preventing the transpiring of the event upon which the plaintiff was entitled to a conveyance ; and, Second, by purchasing an estate charged with a trust, with notice of the existence of such trust. If the compromise were entered into in fraud of plaintiff's rights, and the defendant was a party to that fraud, knowing Jones' title to be good, and superior to its own, clearly a Court of Equity would force the trust upon it, and compel a conveyance to the plaintiff. But the Yellow Jacket Company, like any other litigant, had a perfect right to compromise any action instituted against it—to buy its peace, to protect itself from protracted and vexatious litigation—by any fair means within its power. This is what it seems to have done. It is not charged in the bill in this suit that there was any fraud in that compromise, or that it was entered into for the purpose of defrauding the plaintiff or defeating his rights. If by fairly compromising an action against it any rights of the plaintiff were destroyed, that was a misfortune resulting from the peculiar nature of his rights, rather than from any wrong on the part of the defendant. It may have considered the Jones claim or title to the premises occupied by it utterly worthless, and yet compromised the action brought against it upon that title, for the purpose of ridding itself of harassing litigation. If such was in fact the case, it would be monstrous injustice to hold that such compromise amounted to an establishment of the superiority of the Jones title over that of the defendant, and that thereupon the plaintiff is entitled to recover.

True, that he had not recovered, or could not recover from the defendant, would be no defense to Jones, if he defeated such recovery by his own act, for he had no right to place himself in a position where he could not fulfill his obligations to the plaintiff; but the defendant was under no such obligations. It did what it clearly had a right to do, regardless of the effect it might have upon the rights of the plaintiff. There was nothing, therefore, in the action or conduct of the defendant which constitutes any answer to the objection that the fact upon which the plaintiff was entitled to a

conveyance has not yet transpired, or that will relieve him from the necessity of showing a right of recovery by the strict letter of the instrument executed by Jones to him.

The same objection to the plaintiff's right of recovery may be urged, if it be attempted to charge the defendant as a purchaser of the Jones claim with notice of the existence of the instrument which had been executed to the plaintiff. But it was held by the Court below that the question of title between Jones and the defendant could be determined in this suit, and that if it were found that the Jones title was superior to or better than defendant's, the plaintiff would be entitled to recover precisely the same as if that fact had been determined in the action of ejectment which was compromised by the parties, or as if the fact had transpired upon which the plaintiff's right to a conveyance depended. We are, however, fully satisfied the Court below was wrong upon that point. The defendant has a right to have the question of title between itself and Jones determined by a jury in an action of law. It cannot be deprived of that right by the findings of the Court in a proceeding in equity. The defendant being in possession of the property, there is but one way by which the title between it and another claiming adversely can be tried, and that is by an action of ejectment, and the plaintiff in such action can rely only upon a legal title. A mere equitable right or title would not be sufficient to entitle him to recover. Here the plaintiff has a bare equity, and his bill is filed simply to obtain a decree to force a trust upon the defendant, and to compel its execution. The question of title between Jones and defendant cannot, therefore, be determined in this suit. We are aware that the compromise and the conveyance from Jones to the defendant would constitute a complete defense to an action of ejectment, but, as we stated before, the defendant is not responsible for that fact.

It is undoubtedly true that equity will enforce a trust not only against those persons who are rightfully in possession of trust property, but also against all persons who came into possession of the property bound by the trust with notice of such trust. But the trust can only be forced upon the legal estate acquired by the purchaser. It cannot be enforced so as to bind other property belonging to him. It simply follows the legal estate to which it is attached.

When that is destroyed the trust is extinguished.  Until it is legally established that the Jones title is superior to that of the defendant, there is no evidence that the defendant acquired anything by the conveyance from Jones.   It was in open adverse possession of the property, upon which the plaintiff is attempting to force the trust, at the time it took the deed from Jones.   The defendant doubtless acquired whatever interest he had in the Yellow Jacket ledge, but what that interest was, if anything, has not yet been properly determined.   It is quite evident that no Court of Equity will force a trust of this character upon the defendant, until it is proven that it acquired some estate or property from its grantor, for if its grantor had nothing, the plaintiff is entitled to nothing.   It is claimed that in a proceeding of this kind, if the party against whom the trust is sought to be enforced claims by a superior right of his own, it is necessary for him to set up such title ;   that in this case the defendant has not set up or alleged that it had any such superior title, or any other than that which it acquired from Jones ;  that by the pleadings it is invested with the possession and with no other title, except that which it acquired from Jones.   We can draw no such conclusions from the pleadings presented to us.

The defendant in its answer denies that Jones ever took up, located or entered into possession of any part of the ledge occupied by it, (which is a denial of the allegation in the bill) but admits the location of a surface claim in the vicinity of such ledge ;  then it is explicitly alleged that the conveyance from Jones and Osborne was taken simply for the purpose of compromising the action which had been instituted against it, and that the Jones title was not a valid claim to the premises occupied by it, or any part thereof, and was never so regarded ;  that in taking such conveyance it was not the intention to acknowledge the validity of the Jones title.   There is certainly sufficient in the pleadings to show that the defendant claimed the mining ground by title superior to that asserted by Jones, and in its answer it explicitly denies that Jones had any valid title.   Again, the very instrument upon which the plaintiff hinges all his rights shows that the defendant was in possession and claiming adversely at the time of the execution of the deed, and that he was entitled to an interest in the premises only upon a re-

covery from the defendant, and the pleadings clearly show that no recovery was ever had. Hence, the defendant, having possession all through and having recovered judgment in the action brought against it upon the Jones title, the presumption is surely very strong that the defendant had the superior title.

Rehearing denied.