CUTLER, Respondent, vs. BABCOCK and others, Appellants.

*January 13 — February 2, 1892.*

*Statute of frauds: Oral contract relating to land: Specific performance: Part performance: Possession: Trustee ex maleficio.*

A mortgage of several lots was given to secure future advances which were never made. Afterwards, the mortgagor having sold some of the lots, it was agreed orally between him and the mortgagee that, in order to clear the title, the mortgage should be foreclosed and the mortgagee should bid in the lots and reconvey them to the mort-

81   195
86   58

81   195
111   77

81   195
112   80

81   195
53 LRA  762

gagor or persons designated by him, the mortgagor paying the expenses of such proceedings. The mortgage was foreclosed and the lots bid in accordingly, and the mortgagee conveyed the lots sold by the mortgagor as aforesaid to the purchaser thereof, but did not reconvey to the mortgagor the other lots, in possession of which, however, the mortgagor remained for seventeen years after the foreclosure. The mortgagee then brought this action to recover said lots last mentioned, and the mortgagor counterclaimed for a conveyance thereof to him. *Held,* that there was such a part performance of the oral agreement between the parties as would justify a court of equity in compelling full specific performance by the mortgagee; and also that the refusal of the mortgagee to convey in pursuance of that agreement was such a fraud as to make him a trustee *ex maleficio* for the mortgagor.

APPEAL from the Superior Court of *Milwaukee* County.

This action was brought for the recovery of three lots in the village of Waukesha, and upon a trial by the court the plaintiff had judgment against the defendants for the recovery of two of them only, namely, lots 17 and 18, in block E, and the defendants had judgment for the other. The defendants appeal from that portion of the judgment relating to lots 17 and 18, and insist that upon the pleadings and facts found by the trial court that judgment ought to have been rendered in their favor as to these two lots, and not against them. There is no bill of exceptions. The question is, simply, What judgment should be given on the pleadings and findings?

It is found by the trial court that on and prior to the 28th day of September, 1858, the defendant *Babcock* was the owner and possessor of the real estate described in the plaintiff's complaint, and also of the undivided one half of lots 8, 9, 10, and 11, in block 8, in the village of Waukesha; that on that day he, with his wife, mortgaged to the plaintiff *Cutler* the two lots in question and the four others above described for the sum of $1,500, but he did not advance or pay to the defendant *Babcock* any part of that sum, agreeing to pay the same to him from time to time, as he might

require or need it; that the plaintiff never did advance or pay any part of it; that, after the execution and delivery of the mortgage to the plaintiff, *Babcock* sold and conveyed the undivided one-half of lots 8, 9, 10, and 11 to one T. D. Cook, and the consideration therefor was paid to him with the knowledge and consent of the plaintiff; that the defendant afterwards requested the plaintiff to foreclose this mortgage and bid in the property therein described, for the purpose of clearing the title thereto, which the plaintiff agreed to do upon condition that *Babcock* should pay the costs and expenses of such proceedings; that, in pursuance of said agreement, the plaintiff did foreclose said mortgage, obtaining judgment of foreclosure on the 14th of September, 1860; that, after judgment of foreclosure was obtained, and in pursuance of said agreement, the plaintiff bid in all said property at the sale under the judgment, and, as a part of said contract to so foreclose said mortgage and bid in the property, he agreed that he would convey to said Cook lots 8, 9, 10, and 11, part of the property mentioned and described in the mortgage, at any time that it was desired, and that he would reconvey to the defendant *Babcock* lots 17 and 18 whenever requested so to do, and that, in reliance upon said promise, the defendant *Babcock* permitted the plaintiff to bid in said real estate on the foreclosure sale and take the title thereto in his own name, and the sheriff's deed on such sale was issued to the plaintiff; that thereafter the plaintiff did convey as he had agreed, to said Cook, lots 8, 9, 10, and 11, but did not convey the other two lots, namely 17 and 18, either to the defendant *Babcock* or to any other person for him; that the defendant *Babcock* has been in the continued and uninterrupted possession of said lots, under claim of title thereto, since the year 1860, and prior to the commencement of this action demanded of the plaintiff that he convey them to him according to the agreement, which he

refused to do. It is further found that the mortgage so given by *Babcock* and wife to *Cutler* was without consideration; that it was foreclosed for the benefit of the defendant *Babcock for the sole purpose of clearing the title to said real estate,* and the title thereto was taken by him *under a verbal agreement to reconvey it to the defendant Babcock or such persons as he might designate,* which agreement plaintiff afterwards refused to carry out so far as lots 17 and 18 are concerned.

For the appellants there was a brief by *Ryan & Merton,* and oral argument by *E. Merton.*

*J. V. V. Platto,* for the respondent.

PINNEY, J. The court below decided that the defendant *Babcock,* by consenting to the foreclosure of the mortgage and to the plaintiff bidding in the premises on the sale under the foreclosure judgment and the taking of the title to the lots in himself, as set forth in the findings of fact, attempted to create a trust in the two lots in question resting in parol, which was void under the statute of frauds, and that the plaintiff's legal title thus acquired must prevail, and therefore allowed him to recover against the defendants the lots in question. Whether this is the correct legal conclusion from the facts found is the only question for decision.

The finding, more briefly stated, is to the effect that, inasmuch as *Babcock* desired to clear up the title to the premises embraced in the mortgage to the plaintiff, it was agreed between them, at *Babcock's* request, that the plaintiff should foreclose the mortgage, bid in the property at the sale under the foreclosure judgment, and take a sheriff's deed thereof, and that he should convey the title to lots 8, 9, 10, and 11, described in the mortgage, upon request, to Cook, and upon like request he should convey to the defendant *Babcock* lots 17 and 18, upon condition *Babcock* would pay the costs

and expenses of such proceedings; that the contemplated foreclosure and sale took place, and the premises affected thereby were conveyed to the plaintiff by the sheriff; that, *in reliance upon plaintiff's promise* to convey said premises as aforesaid, *Babcock* permitted the plaintiff to bid in said real estate at said sale and take the title thereto in his own name,— that is to say, he was induced thereby not to take any other measures to secure the title to himself than those contemplated by the agreement.   It is stated in the latter portion of the finding that the agreement to convey by plaintiff was "that he would convey said lots to the defendant or such persons as he might designate."

The plaintiff has performed his part of the agreement so far as lots 8, 9, 10, and 11, which were to be conveyed to Cook, are concerned, the consideration for which lots *Babcock* received with plaintiff's consent, and, indeed, he fully complied with his part of the agreement in all respects except as to lots 17 and 18, which he refuses to convey to the plaintiff.   It is a just inference that *Babcock* paid the costs and expenses of the proceedings from the fact that the plaintiff made the conveyance to Cook which was to follow and not precede such payment, from the long period of time that has elapsed, and the fact that no claim appears to have been made by the plaintiff in the action that *Babcock* had been at any time in default in this or any other respect in performing the agreement on his part.   The agreement, therefore, has been fully performed, except as to the conveyance by the plaintiff to the defendant *Babcock* of the lots in question.   The plaintiff insists upon holding and enforcing the legal title so acquired by him, for the reason that, being by parol, it is within sec. 2302, R. S., which is that "no estate or interest in lands other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, assigned, surrendered, or

declared unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing;" and relies upon the case of *Rasdall's Adm'rs v. Rasdall*, 9 Wis. 379, and other cases of the class to which it belongs. The provisions of this section, however, are subject to those of sec. 2305, R. S., that nothing therein contained "shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance of such agreements."

The object of the agreement under consideration, and the purchase which the defendant permitted the plaintiff to make, by foregoing, in pursuance thereof, his right to bid in the lots at the sheriff's sale, and by which alone the plaintiff was allowed and enabled to obtain the legal title, was not the creation of an express trust by parol in the lots in question in contravention of the statute, but, as found by the trial court, was for the sole purpose of clearing the title of said real estate, and the foreclosure and the purchase at the sheriff's sale effected by the deed to the plaintiff were successive steps to be performed in the execution of the agreement in question, which was to culminate in the conveyance by the plaintiff to *Babcock* of the lots when the title should be perfected in the manner contemplated by the parties.

In ascertaining the legal effect of the agreement, it is to be borne in mind that *Babcock*, when the agreement was made and the sale took place, was understood to be, and was, the owner of the lots in question, subject to the mortgage to the plaintiff, and was not *a mere stranger* to the title.

The fact that, pursuant to the agreement, *Babcock* was induced to forego his right to bid in the property, so that the title thereto might be perfected, and the plaintiff was

Cutler vs. Babcock and others.

thus enabled to obtain title solely upon the faith of his
agreement to convey it to *Babcock* or to such persons as he
might designate, together with the continued possession by
the latter for such a long period of years without his right
being questioned so far as appears, taken in connection with
the conveyance by the plaintiff of the four lots to Cook, in
part execution of the agreement, must, we think, be re-
garded as such acts of part performance as to take the case
out of the statute of frauds, and justify the court in de-
creeing a conveyance of the premises to the defendant
*Babcock.*    Part performance of a parol contract is allowed
to take it out of the statute and justify a decree for its
specific performance upon the ground that it would be in-
equitable and a fraud upon the part of the one insisting
upon the statute if, having by his acts induced his adver-
sary to do acts on his part in part performance of the con-
tract and upon the faith of its further performance by both
parties, and for which he cannot well be compensated ex-
cept by a specific performance of the agreement, he shall
be allowed to repudiate and refuse to perform it on his
part.    The act or acts of part performance, to have this
effect, must be referable to the parol agreement, be in part
execution of it, and not be referable to another title, and
be an act prejudicial to the party claiming specific per-
formance, and for which he can have no adequate compen-
sation in damages if the agreement be not enforced.    Pos-
session, more frequently relied on than any other, is an act
of part performance as to both parties to the agreement, in
that the owner has allowed the other party to do an act on
the faith of the contract, namely, to take and hold posses-
sion of the land, which would otherwise be wrongful and
would render him a trespasser, and he, on his part, has
withdrawn from the land and acquiesced in the possession
of the other party as rightful.    They are therefore both
bound.    Fry, Spec. Perf. §§ 575–579; Wat. Spec. Perf.

§§ 260–263.  The possession, in some cases, may be of an equivocal character, as where a tenant under a lease is already in possession, but holds over and enters into a parol agreement to purchase, in which case, it is said, his existing and continued possession will be referable to the lease and not to the parol agreement.  But in other cases it has been held that the possession of the tenant after the expiration of the lease, where there has been a parol agreement for a renewal, is referable only to the contract for renewal, and is part performance of such contract.  Fry, Spec. Perf. §§ 575–579, and cases there cited.  And the general rule is that the possession, to be available as an act of part performance, must not be merely the continuance of a previous possession, but one given and taken under and in consequence of the parol contract.  But this rule is subject to exceptions.  A wrongful possession will not be sufficient, but where possession has been taken without consent, or an existing possession has been retained, if the owner has afterwards allowed the party to remain in possession, this, it seems, will amount to an act of part performance of a parol agreement to convey.

In *Fisher v. Moolick*, 13 Wis. 322, where one who was already in possession under a pre-emption claim entered into a parol agreement with another to enter the land for him which he was so occupying, and to convey it to him on the payment of a certain price, the continued possession of such party, with the knowledge and consent of the person with whom he contracted, was held an act of part performance sufficient to take the case out of the statute of frauds. And in *Lincoln v. Wright*, 4 De Gex & J. 16–20, a case where a mortgagee with a power of sale sold the mortgaged premises, then in the possession of the mortgagor, and it was verbally agreed, in substance, that another should buy it on behalf of the mortgagor for a certain sum, and that the mortgagor should pay interest and continue to occupy

the premises, it was held that his continued occupation, after the conveyance which extinguished his title, was referable only to the verbal agreement, and amounted to part performance of that agreement, and excluded the operation of the statute.

The continued possession of the premises in question, under a claim of title thereto, by *Babcock*, for a period of seventeen years between the mortgage sale and the bringing of this action, presumptively with the knowledge and acquiescence of the plaintiff, must, we think, be regarded as referable only to the parol agreement. The foreclosure proceedings had extinguished the title and vested it in the plaintiff, and *Babcock's* possession during all this long period of time can, we think, be referable only to the parol agreement in question, and must be held sufficient to take it out of the operation of the statute. An agreement by one person to purchase land for another, and the purchase of the same accordingly, under circumstances which would amount to a fraud upon the latter if the former were allowed to repudiate his promise, is not within the statute. The purchaser cannot, in such case, be allowed to adopt and use the agreement by which he obtained title, and repudiate its conditions, by which he was to convey it, in execution of the contract, to the other party. In this case the agreement between the plaintiff and defendant *Babcock* that the plaintiff should purchase the lots at the sheriff's sale under the foreclosure judgment, and acquire a sheriff's deed thereto, was equivalent to a stipulation on the part of *Babcock* that he would do nothing to prevent the plaintiff from performing his part of the agreement and obtaining title by means of the foreclosure and sale, as a means of accomplishing the purpose in view, namely, perfecting the title to the lots, and was a renunciation on the part of *Babcock* of his right, by litigation in the foreclosure suit or by bidding at the sale, to protect his rights and interests

by any other means than those provided for by the agreement. Having thus enabled the plaintiff to acquire title to the property under the agreement in question, it would be a fraud on the defendant *Babcock* if the plaintiff were now permitted to repudiate his promise and obligation to convey according to its terms.

The case, in principle, is identical, we think, with those of *Paine v. Wilcox*, 16 Wis. 202–217; *Daniels v. Lewis*, 16 Wis. 142; and *Horn v. Ludington*, 32 Wis. 73. In the former case a somewhat similar arrangement existed, where a party permitted a sheriff's sale to take place, which he might have prevented by further litigation, upon the faith of an oral agreement that the purchaser should reconvey to him or to his use, upon certain terms, under which the sale was allowed to take place; and it was held that " whenever a party so circumstanced is also in a condition to prevent a sale by further litigation, and he makes an agreement with the adverse party by which the sale is allowed to take place for the purpose of passing the title to a particular person, who is to hold it as security or reconvey it upon certain terms, that it might operate as the grossest fraud upon him if the one who had thus obtained the title might then repudiate the agreement and assume the character only of a general purchaser at a judicial sale. A judicial sale proceeds altogether *in invitum.* Each party stands upon his own rights, and neither is thrown off his guard or induced to neglect any steps to protect himself. But where such sale is allowed to take place for the purpose of executing an amicable arrangement, the most valuable interests might be sacrificed if the party thus getting the title could ignore the agreement and insist on being regarded only as a hostile purchaser. To get a title by means of such an agreement, used to throw the owner off his guard and induce him to abandon his litigation and deliver himself defenseless in the hands of his enemy, and

then claim to hold as though the sale had been entirely adverse without any such agreement, is an obvious fraud." And this was so held on account of the impossibility of restoring a party, who has so far performed his part of the agreement, to his former position, and that his rights can only be preserved by enforcing the agreement on the faith of which he acted. The plaintiff's conduct, after having obtained the title in the manner and for the purpose stated, is clearly fraudulent as against the defendant *Babcock*, and entitles him to a decree for a conveyance of the property.

Nor is it necessary to rest the right of the defendant *Babcock* solely on the power of a court of equity to compel the plaintiff to specifically perform his part of the agreement by conveying the lots in question to the defendant. The relief sought may well be rested on the jurisdiction of the court on the ground of fraud by holding the plaintiff liable to convey as a trustee *ex maleficio*. The defendant, relying upon the promise of the plaintiff to convey to him and thus protect his interests, was induced to refrain from taking any other steps for that purpose, either by litigation or by bidding at the sale, and from which he was, by the terms and purpose of the agreement, precluded. The plaintiff was thus enabled to take to himself the legal title, in order that it might be perfected and conveyed to the defendant, and it will operate as a surprise and fraud on the defendant if the plaintiff is allowed to repudiate his obligation to convey to the defendant and carry out the agreement. The facts of the case justify the belief that, after having made the agreement, the plaintiff perceived his advantage growing out of the confidence created by it, and did not hesitate to use it in order to accomplish the result before us, namely, the acquisition by those means of the legal title, and the subsequent betrayal of the confidence reposed in him, by insisting on the statute of frauds as a means of holding these two lots without having paid

or agreed to pay any consideration whatever for them. As against conduct so grossly fraudulent, the defendant is entitled to relief. In *Eldredge v. Jenkins*, 3 Story, 290, Judge STORY held that "the rule in equity always has been that the statute is not allowed to operate as a protection for a fraud, or as a means of seducing the unwary into a false confidence, whereby their intentions are thwarted or their interests are betrayed." And in *Lincoln v. Wright*, 4 De Gex & J. 22, TURNER, L. J., held that the case there before the court needed not the aid of possession as part performance of the agreement, but that the case was one not of mere trust, but of equitable fraud; that a party could not be allowed to adopt one part of the transaction and repudiate the other. This view of the case is vigorously maintained by *Brook v. Chappell*, 34 Wis. 413–418; and by *Laing v. McKee*, 13 Mich. 124; *Beegle v. Wentz*, 55 Pa. St. 374; *Faust v. Haas*, 73 Pa. St. 300, 301; *Boynton v. Housler*, 73 Pa. St. 453. In *Wolford v. Herrington*, 74 Pa. St. 311–313, it was held that if one *having an interest* in land is induced to confide in the verbal promise of another that he will purchase it at sheriff's sale for the benefit of the former, and in consequence the other is allowed to obtain the legal title, his denial of the confidence is such a fraud as will make him a trustee *ex maleficio*. The distinction upon which cases such as this have been made to turn is as between one having an interest in the premises to protect by the parol agreement and a *mere stranger* to the title and estate seeking to enforce such an agreement. That, under the facts found, the plaintiff ought to be held a trustee *ex maleficio* for the defendant *Babcock*, is maintained in *Arnold v. Cord*, 16 Ind. 177; *Teague v. Fowler*, 56 Ind. 569; *Hunt v. Elliott*, 80 Ind. 258; *Ryan v. Dox*, 34 N. Y. 307; *Morey v. Herrick*, 18 Pa. St. 128, 129; and *Rose v. Bates*, 12 Mo. 30–51.

We are of the opinion that the defendants are entitled to

judgment in their favor, and that the defendant *Babcock* is entitled to the relief prayed in his counterclaim.

*By the Court.*— The judgment of the superior court of Milwaukee county in favor of the plaintiff is reversed, and the cause is remanded to that court with directions to grant the defendant *Babcock* the relief prayed for in his counterclaim.