No. 2556

# MOORE v. DE BERNARDI

April 7, 1923.                              213 Pac. 1041.

1. APPEAL AND ERROR—FINDING OF TRIAL COURT CONCLUSIVE ON APPELLATE COURT WHEN EVIDENCE IS CONFLICTING.

Where there is a substantial conflict in the evidence, the finding of the trial court is conclusive upon the appellate court in the absence of a showing that a wrong conclusion was reached.

2. APPEAL AND ERROR—WHERE FINDING ASSAILED AS BEING CONTRARY TO EVIDENCE, COURT DEEMED TO HAVE FOUND AS TRUE EVIDENCE FAVORABLE TO PREVAILING PARTY.

The rule which governs the appellate court in reversing a verdict alleged to be contrary to the evidence, that the jury must be deemed to have found to be true the evidence that is most favorable to the prevailing party, applies to findings by court.

3. ATTORNEY AND CLIENT—ATTORNEY'S AUTHORITY TO BIND CLIENT EXTENDS TO ACTS NECESSARY FOR PROSECUTION OF BUSINESS FOR WHICH EMPLOYED.

An attorney's authority to bind his client extends only to such acts and agreements as are necessary for the due prosecution of the business in connection with which he has been employed, and he has no implied power to bind his client by an agreement collateral to and independent of the subject-matter of his employment.

4. ATTORNEY AND CLIENT—CLIENT NOT BOUND BY UNAUTHORIZED AGREEMENT OF ATTORNEY TO CONVEY LAND.

A client is not bound by an unauthorized agreement of his attorney to convey land.

5. TRUSTS—EVIDENCE HELD TO ESTABLISH AGREEMENT WHEREBY BANK AGREED TO FORECLOSE PROPERTY FOR BENEFIT OF OCCUPANT.

Evidence held to show that defendant bank, through its cashier, made a parol agreement with defendant occupant of land whereby bank agreed to proceed with foreclosure of property for occupant's use and benefit, and convey the legal title to him for a consideration upon acquiring the legal title after period of redemption expired.

6. FRAUDS, STATUTE OF—REFUSAL TO PERFORM A VOID PAROL AGREEMENT IS NOT A FRAUD IN LAW OR IN EQUITY.

The mere refusal to perform a parol agreement, void under the statute, may be a moral wrong, but it is not a fraud in law or in equity.

7. FRAUDS, STATUTE OF—REFUSAL TO PERFORM PAROL AGREEMENT TO CONVEY LAND NOT, OF ITSELF, SUFFICIENT TO TAKE AGREEMENT OUT OF STATUTE.

A refusal of a bank to carry out its parol agreement to convey land to defendant for a consideration after the bank obtained sheriff's deed held not, of itself, a breach tainted with fraud to take the agreement out of the statute of frauds.

8. TRUSTS—TRUSTS EX MALEFICIO EXCEPTED FROM OPERATION OF STATUTE OF FRAUDS.

Trusts ex maleficio are excepted from the operation of the statute of frauds.

9. TRUSTS—VIOLATION OF PAROL AGREEMENT TO FORECLOSE PROPERTY FOR BENEFIT OF OCCUPANT HOLDING INTEREST IN LAND HELD TO CREATE TRUST EX MALEFICIO.

Where defendant occupant of land had an existing interest therein with the mortgagor, but, in reliance upon a parol agreement with the mortgagee bank that the latter would foreclose for defendant's use and benefit, and convey land to him upon acquiring title, if he would not become a bidder to protect his interest in the property, defendant refrained from protecting his interest so that he could acquire title to the land in its perfected state through the foreclosure proceeding, *held*, that the refusal of the bank to convey was such a fraud as operated to convert the bank into a trustee ex maleficio.

10. TRUSTS—PURCHASER AT FORECLOSURE SALE TAKING TITLE FOR ANOTHER, BUT VIOLATING HIS TRUST, BECOMES TRUSTEE EX MALEFICIO.

Where one having an interest in land is induced to confide in the verbal promise of another that he will purchase for the benefit of the former at a sheriff's sale, and in pursuance of such promise allows him to become the holder of the legal title, a subsequent denial by the purchaser of the confidence is such a fraud as will convert the purchaser into a trustee ex maleficio.

11. TRUSTS—CONVENTIONAL RELATION OF TRUSTEE AND CESTUI QUE TRUST NEED NOT EXIST TO CREATE CONSTRUCTIVE TRUST.

To create a constructive trust it is not necessary that a conventional relation of trustee and cestui que trust, or that any express fiduciary relation should exist between original wrongdoer and the beneficial owner of land, since such relations arise in invitum for the purpose of working out justice in the most efficient manner.

12. TRUSTS—TRUST AGREEMENT MAY NOT BE AVOIDED BECAUSE PROMISING PARTY WAS MOVED BY BENEVOLENT CONSIDERATIONS ONLY.

A trust may not be avoided on the ground that the party promising was moved merely by benevolent considerations, since such considerations constitute the foundation of almost every trust, and a trustee should be held to account in the same spirit in which he originally contracted.

APPEAL from Second Judicial District Court, Washoe County; *Edward F. Lunsford,* Judge.

Action by Kate Moore against Rick De Bernardi, in which the Washoe County Bank was made a defendant. Decree for defendant De Bernardi, and plaintiff appeals. **Affirmed. On rehearing, this opinion affirmed.**

*Sardis Summerfield,* for Appellant:

Specific performance to convey land made by attorneys of parties to action in which land is in dispute, will not be decreed in absence of specific authority in such attorneys to make contract. Hagerman v. Bates, 38 Pac. 1100. No such agreement is valid unless affirmed and ratified by the principals. Bank v. McEwen, 76 N. E. 222.

Ordinarily there is no implied power vested in attorney at law to bind his client by contract. Haselton v. Florentine Co., 94 Fed. 701; Haynes v. Tacoma Co., 34 Pac. 922.

A general retainer does not authorize attorney to enter into agreements regarding his client's property. Hagerman v. Bates, supra; Scully v. Book, 28 Pac. 556; 4 Cyc. 945-6; Weeks on Attorneys at Law, sec. 219.

Constructive trusts do not arise by agreement or from intention, but from operation of law. 39 Cyc. 169; Bowler v. Curler, 21 Nev. 161; 28 R. C. L. 1232.

Though some decisions apparently hold to the contrary, it is the generally accepted rule that mere verbal agreement, by which one of the parties thereto promises to buy in at judicial sale, lands in which the other has interest and to hold same for latter's benefit, does not, in absence of other circumstances, create trust enforceable in equity, even though the agreement is carried out to extent that promisor acquires property at such sale. The agreement is within the statute of frauds. 26 R. C. L. 1244; Strasner v. Carroll, 187 S. W. 1057; Minot v. Mitchell, 95 Am. Dec. 685, and note.

Specific performance of contracts to sell land will not be enforced when defendant had no title to lands of which conveyance is sought to be compelled. Kennedy v. Hazelton, 32 L. Ed. 576; Adair v. Adair (Or.), 29 Pac. 193.

Specific performance will never be decreed where the party can otherwise be fully compensated. Memphis v. Brown (U. S.), 22 L. Ed. 264; Texas Co. v. Central Co., 194 Fed. 1.

A constructive trust always arises ex maleficio; it is

constructed by law, and not by parties. If parties have attempted to construct it, the law will not construct one. Through failure to comply with the statute it becomes an invalid express trust. Spaulding v. Collins (Wash.), 99 Pac. 306.

Continued possession by grantor after full conveyance by him while in possession of property conveyed is not constructive notice. Brophy M. Co. v. B. & D. M. Co., 15 Nev. 113, which refused to follow Pell v. McElroy, 36 Cal. 268, but which was cited with approval in McDonald v. Fox, 20 Nev. 368; Gruber v. Baker, 20 Nev. 462.

*Boyd & Curler,* for Respondent:

The whole case involves itself around the separate defense and counterclaim of defendant, and the principles of equity upon which he believes he is entitled to judgment in his favor. The evidence clearly establishes a constructive trust in favor of respondent, by virtue of his agreement with the bank. It is evident from all the facts in this case that the fraud complained of—that is, the neglect and refusal of the bank to notify respondent of amount due and to give him the deed—immediately impressed the property with a constructive trust, and this trust followed property to vendee of bank, unless such vendee could show that she was a bona-fide purchaser without notice. Such property is taken completely out of statute of frauds.

Courts of equity have exercised their powers to enforce contracts which in good faith ought to be complied with and will do this by impressing property with a trust for use and benefit of one who would be defrauded unless court of equity gave its aid in enforcing agreement. Pomeroy (2d ed.), sec. 1044.

Where a person acquired legal title to land by an intentionally false verbal promise and seeks to retain property as his own equity will not regard such person as holding property charged with a constructive trust, and will compel him to fulfil trust by conveying according to his agreement. Isenberg v. Goldsmith, 113 Pac.

1127; Pomeroy (2d ed.), 1005, and footnote; Brown's Estate v. Stair, 136 Pac. 1003.

Equity will not permit statute of frauds to be used as instrument of fraud. When person, through influence of confidential relation, acquires title to property, or obtains advantage which he cannot conscientiously retain, the court will grant relief. Bowler v. Curler, 21 Nev. 158; Nehls v. Stock Farming Co., 43 Nev. 261.

It is well established that the open, visible, notorious, and exclusive possession of land is either notice itself of rights of party in possession, or is sufficient to put person upon inquiry. Delvin on Deeds, secs. 760, 762, 764, 769.

The simple, independent fact of possession is sufficient to raise presumption of interest in occupant. He cannot be regarded as purchaser in good faith who negligently and wilfully closes his eyes to pertinent facts indicating adverse possession, when he could, with reasonable diligence, have informed himself of facts. Pell v. McElroy, 36 Cal. 273; 75 Cal. 131; 82 Cal. 117.

It is purchaser's duty to know who is in possession before making purchase; otherwise he could purposely avoid any inquiry and evade rule and its consequences entirely. Scheerer v. Cuddy, 85 Cal. 273. If he has notice of occupant's title before payment, he is not bona-fide purchaser. Eversdon v. Mayhew, 65 Cal. 163; and burden is upon such purchaser to show he had no notice. Wilhoit v. Lyons, 98 Cal. 409; Beattie v. Crewdson, 124 Cal. 579.

By the Court, SANDERS, J.:

Kate Moore, a married woman, in her own right as owner, sued Rick De Bernardi to recover possession of a certain parcel of land in Washoe County, situate near the western limits of the city of Reno, which bears the name of "Rick's Resort" or "Roadhouse," and demanded in her complaint judgment for $150 per month as rental from the 22d day of July, 1920, until possession be delivered. The defendant answered, and by way of

counterclaim interpleaded the Washoe County Bank as a party defendant, and alleged facts to show that said bank and plaintiff hold the land in trust for his use and benefit.

Upon extended findings of facts following closely the averments of the counterclaim, which are too lengthy to be set out, the trial court concluded as a matter of law that the conveyance of the land by the Washoe County Bank to Kate Moore, on the 22d day of July, 1920, if permitted to stand, would operate as a fraud upon the rights of the defendant; that in virtue of an agreement, set up in the counterclaim, between the bank and the defendant, a constructive trust had arisen in defendant's favor in the land; and that plaintiff, Kate Moore, purchased the property from the bank with full knowledge of said agreement. Thereupon it was adjudged, ordered, and decreed that said parties convey to the defendant the land in controversy, free and clear from all incumbrances, upon condition that the defendant pay to the Washoe County Bank $6,336.09, or deposit that amount of money into court for its use and benefit, and that the bank, on the payment of said sum, cancel of record a certain mortgage given it by Kate Moore and her husband, M. B. Moore, which bears date on the 22d day of July, 1920. The Washoe County Bank has not appealed, but Kate Moore, the plaintiff, appeals from said judgment and decree, and also from an order denying and overruling her motion for a new trial.

While numerous errors are assigned upon exceptions taken to rulings in the course of the trial with respect to the admission and rejection of evidence, the material assignments of error, reduced to precise terms, are: First, that the agreement set up in the counterclaim and purported to be established by the findings was, in fact, a mere parol agreement entered into by one of the firm of attorneys for the bank, who had charge of the bank's action brought against one Constance Parker and Rick De Bernardi to foreclose a mortgage on the land, which had been given the bank by Constance Parker in her own name, in May, 1914, and that said

agreement was made and entered into by said bank's attorney without its authorization and ratification. Second, that, if said agreement was established by sufficient and legal evidence, it not being in writing, it was within the condemnation of the statute of frauds. Third, that the evidence is insufficient to support the finding that Kate Moore purchased the property in dispute with notice of the defendant's claim of right and interest in the property.

If there be merit to the last proposition, it is decisive of the appeal, because, if Kate Moore was a purchaser in good faith and without notice, she acquired by her deed a higher right, and took the property relieved of any trust that may have been created by the alleged agreement between her grantor and the defendant. The finding with respect to actual notice, and averred in the counterclaim, is, in substance, that on the 19th day of July, 1920, the defendant notified Kate Moore, by and through her husband, M. B. Moore, who acted as her agent, that the Washoe County Bank purchased the property for the defendant's use and benefit at a sheriff's sale thereof, and that the defendant would insist upon his rights under his contract, and at the same time informed said agent of the terms and conditions of the agreement existing between the defendant and the bank, and that prior to July 22, 1920, plaintiff was fully aware of the fact that the bank had purchased the property at a sheriff's sale for the use and benefit of the defendant.

1, 2.   The evidence in support of the finding is based solely on the testimony of James T. Boyd, an attorney of record in this case, the substance of which was that M. B. Moore visited his residence for the purpose of ascertaining from him what his client, Rick De Bernardi, intended doing about the property in dispute. The evidence opposed to his testimony in this particular is that of the witness M. B. Moore, who testified, in substance, that no such conversation was ever had at the time and place stated by Boyd, or at all. The testimony of these witnesses in all material respects is not only in sharp, but irreconcilable, conflict on the

material fact of notice. Hence, in order for the trial judge to have found that the witness Boyd, on the date mentioned, informed the witness Moore of the existence of the agreement in question, and of its terms and conditions, he must have acted upon the truth of the testimony of Boyd and rejected the testimony of Moore. There being, then, a substantial conflict in the evidence, under the rule, the finding is conclusive upon this court. Dixon v. Miller, 43 Nev. 280, 184 Pac. 926, and cases cited.

It has been repeatedly held that, in cases tried by the court without a jury, the same consideration is given the court's findings as to a verdict, and the same rules apply as to reversing them on appeal, on the ground that they are contrary to the evidence, as apply to a verdict. In such a case the rule is the same as that which governs the court in reviewing a judgment entered upon the verdict of a jury, which is that the jury must be deemed to have found to be true the evidence that is most favorable to the prevailing party. Canda v. Totten, 157 N. Y. 286, 51 N. E. 989. We, therefore, in the absence of anything to show that the court reached a wrong conclusion, decline to disturb the finding that Kate Moore was not a purchaser without notice of the defendant's claim to the property.

In this connection it is proper to state that we ignore the argument that Kate Moore had constructive notice of the defendant's right and claim to the property by reason of his long-continued occupancy and possession thereof, for the reason that it is not within the issue, which was that Kate Moore had actual notice of the agreement existing between the defendant and her grantor when she purchased the property and gave a mortgage back to the bank to secure the balance due on its purchase price. The relief granted defendant was upon the ground that a constructive trust was created by the agreement between the defendant and the bank, which the latter was bound to execute, of which agreement creating the trust Kate Moore had actual notice.

It is next argued on behalf of Kate Moore, as the successor in interest of her grantor, the Washoe County Bank, that the agreement between said bank and the defendant, upon which the relief as prayed in the defendant's counterclaim was granted, is not established by sufficient or legal evidence and, in the next place, if said agreement was so established, it is not in writing, and therefore within the rule of the statute of frauds. We are of opinion that the agreement was established by sufficient and competent evidence, but the question of whether the conclusion of law that a constructive trust had arisen by virtue of the agreement which the Washoe County Bank was bound to execute is worthy of discussion.

3, 4. It requires no argument to convince us that an attorney's authority to bind his client extends only to such acts and agreements as are necessary for the due prosecution of the cause or business in connection with which he has been employed; he has no implied power to bind his client by an agreement collateral to and independent of the subject-matter of his employment. A client is not bound by an unauthorized agreement of his attorney to convey land. Thornton on Attorneys at Law, sec. 202. But we do not understand the case or the finding of the trial judge to be that the agreement in question was not authorized and ratified by the bank, but, on the contrary, that it was so authorized. The finding is based solely upon the testimony of the defendant's attorney, Boyd, who testified, in substance, that, before the agreement was consummated by him with one of the firm of attorneys for the bank, he was first assured by the cashier of the bank, after stating to him his reasons for soliciting the agreement on behalf of his client, that any agreement entered into by the witness with the bank's attorneys would be entirely agreeable and satisfactory to the bank. It appears that at the time the proposition was made to the bank, which culminated in the agreement, the bank had commenced an action (in January, 1918) in the court below to foreclose a mortgage on the land in controversy, which had been given it in 1914 by one

Constance Parker to secure the payment of her note to the bank for $3,000, and De Bernardi was made a party defendant to the action. It is conceded, or must be conceded, that De Bernardi had an interest in the property which he had a right to protect and preserve from being completely extinguished by the foreclosure of the bank's mortgage. It appears that he was then in possession of the property, and had been in its continuous occupancy under a claim of right since 1906, and, in order to protect and preserve his interest from entire loss, and to obtain the advantage of having the legal title to the land conveyed to him through the foreclosure proceeding, upon the authority of the cashier of the bank, De Bernardi's attorney entered into an arrangement or agreement with R. M. Price, the attorney who had in charge the foreclosure proceeding, whereby it was agreed that the bank should and would proceed with the foreclosure of its mortgage for the defendant's use and benefit, and, upon acquiring legal title thereto through its foreclosure proceeding, convey the land to De Bernardi, and, in consideration for its promise to convey, De Bernardi agreed not to appear in the action and permit his default to be taken, and not to become a bidder at the sheriff's sale of the property, or take any other step, by action or otherwise, to protect his interest in the property. The foreclosure took place, and upon the expiration of the time for redemption the sheriff of Washoe County delivered to the bank a sheriff's deed to the property. The bank thereafter refused to carry out its promise to convey the property to De Bernardi.

5. The cashier of the bank, as a witness in the case, testified, in substance, that he had no knowledge or recollection of having ever authorized the agreement, as testified to by the witness Boyd. There is no doubt that the witness may honestly have been of opinion that, if he had authorized the agreement, he would have recalled the fact, and would never have dealt with Kate Moore. But the cashier's nonrecollection, or the bank's repudiation of the agreement by its conveyance of the

property to Kate Moore, does not justify the deduction that the agreement was not authorized by the bank's cashier. The cashier's failure to remember or recollect the fact does not amount to a contradiction of the positive testimony of the witness Boyd that the agreement was authorized by the cashier of the bank; neither does the conveyance of the property amount to such a contradiction, because the repudiation of the agreement was but the conclusion of the officers of the bank that no such agreement had been authorized. There being, then, no substantial conflict in the evidence upon which the finding of the court is based, we decline to disturb the finding.

6. The agreement having been established, the inquiry arises: Does the agreement and circumstances of the case create a trust which a court of equity can enforce. In support of the affirmative, counsel for De Bernardi rest their case on the principle, which has become almost a maxim in equity, that the statute of frauds, intended as a protection against fraud, shall not, in equity, be perverted to its consummation. We are in accord with what is said in Moseley v. Moseley, 86 Ala. 292, 5 South. 732, that this principle, which may now be regarded as a maxim, has been carried in many cases so far beyond the first intention as to amount to annihilation of the statute of frauds. It is certain that the principle has been overworked by the defendant in this case. The mere refusal to perform a parol agreement, void under the statute of frauds, may be a moral wrong, but it is in no sense a fraud in law or in equity. Wheeler v. Reynolds, 66 N. Y. 234.

7-9. In the present case no specific averment of fraud is alleged in the pleadings, but the court concludes fraud in law from its findings, manifestly upon the assumption that to permit the parties to hold the land in face of the agreement and the circumstances would be to support a breach of trust, and a fraud in law. If from this it is to be understood, as argued by the defendant, that the refusal of the bank to carry out its agreement constituted such a fraud as calls for the

intervention of a court of equity, we should be impelled to conclude that there is no such element in its breach as to take it without the rule of the statute of frauds. On examination, however, of the material findings, in connection with the evidence in the case, we are satisfied that the court's conclusion of law is warranted, not because the bank refused to carry out its parol agreement, but for the reason that it appears, as above stated, that the defendant had an existing interest in the land, which, in reliance on the promise contained in the agreement, he omitted to protect, and by its terms expressly precluded himself from protecting from entire loss by the foreclosure of the prior mortgage of the bank. In reliance on the agreement, he omitted and refrained from taking any other step to protect his interest, and, furthermore, by the bank's failure to carry out the agreement he lost the advantage of having the legal title transferred to him in its perfected state, which, apparently, was one of his motives in soliciting the agreement. We are of opinion that, the defendant having an interest in the land, the subsequent denial of the confidence reposed was such a surprise and fraud as operates to convert the bank into a trustee ex maleficio, which trusts are excepted from the operation of the statute of frauds. 3 Pomeroy, Eq. Jur (4th ed.), sec. 1055, note 1.

10. The rule is established by a number of authorities that, where one having an interest is induced to confide in the verbal promise of another that he will purchase for the benefit of the former at a sheriff's sale, and in pursuance of this allows him to become the holder of the legal title, a subsequent denial by the latter of the confidence is such a fraud as will convert the purchaser into a trustee ex maleficio. In the case of Chadwick v. Arnold, 34 Utah, 48, 95 Pac. 527, the writer of the opinion industriously collates the numerous authorities in support of this proposition. In addition, we cite the cases supporting the text, 39 Cyc. 180. As remarked in Cutler v. Babcock, 81 Wis. 195, 51 N.W. 420, 29 Am. St. Rep. 882, the distinction upon which

cases such as this have been made to turn is as between one having an interest in the premises to protect by the parol agreement and a mere stranger to the title and estate seeking to enforce such agreement. We readily concede that, if defendant had no interest in the property in controversy, no constructive trust was created by the agreement, and without that interest the agreement would clearly be within the rule of the statute. The defendant, however, having an interest, and in reliance upon the bank's parol agreement to purchase and convey to him the land on receipt of the legal title, the refusal of the bank to carry out the agreement and the subsequent denial of the confidence reposed in it was such a fraud as to make the bank a trustee for the defendant.

It is manifest that M. B. Moore, as agent for his wife, before he negotiated with the bank for its purchase, had actual notice of the defendant's claim of interest in the property, but obviously was of the opinion that the defendant's interest had been completely extinguished by the foreclosure of the bank's mortgage and the sheriff's deed, and therefore her deed would operate as her protection from the claim of the defendant. But this position, unfortunately for Mrs. Moore, was overcome by the court's finding that her agent, prior to the date of the deed, had actual notice that her grantor had promised and agreed to convey the legal title to the land to the defendant. She was not, therefore, a purchaser in good faith without notice.

11. While it is not incumbent upon this court to answer argument, some of the contentions of counsel for Mrs. Moore deserve special mention. It is urged that no confidential relation existed between the bank and the defendant, and in the foreclosure of its mortgage it did nothing more than what it had the right to do; that the bank's promise, at most, was but a gratuitous undertaking, without consideration, unenforceable, and binding on no one; that the inducement for the promise moved from the defendant to the bank, and not from the bank to the defendant, and no fraud or imposition was practiced upon the defendant.

12. It is not indispensable that the conventional relation of trustee and cestui que trust, or any express fiduciary relation, should exist between the original wrongdoer and the beneficial owner of the land to create a constructive trust. They arise in invitum for the purpose of working out justice in the most efficient manner. Millard v. Green, 94 Conn. 597, 110 Atl. 177, 9 A. L. R. 1610. It will not do to say, as said in Sandfoss v. Jones, 35 Cal. 487, quoting from Soggins v. Heard, 31 Miss. 428, that the party promising was moved merely by friendly or benevolent considerations, and may therefore, at his option, decline a compliance with his agreement. Such considerations constitute the foundation of almost every trust, and the trustee should be held to account as nearly as possible in the same spirit in which he originally contracted.

For the reasons and upon the authorities hereinabove stated, we are of the opinion that the evidence is sufficient in this case to support the findings, and the court's conclusions of law are warranted thereby.

The decree appealed from is therefore affirmed.

### On Petition for Rehearing

December 1, 1923.                    220 Pac. 544.

1. TRUSTS—CONSTRUCTIVE TRUST ESTABLISHED ONLY BY CLEAR AND SATISFACTORY EVIDENCE.

A constructive trust cannot be established by a mere preponderance of evidence, but must be established by clear, definite, unequivocal, and satisfactory evidence.

2. TRUSTS—ANY UNOBJECTIONABLE EVIDENCE TENDING TO PROVE FRAUD ADMISSIBLE TO PROVE CONSTRUCTIVE TRUST.

Any evidence which tends to prove or disprove fraud, actual or constructive, necessary to constitute a constructive trust, and which is not objectionable as to the relevancy, competency, and materiality of the evidence, is admissible.

3. TRUSTS—PAROL EVIDENCE ADMISSIBLE TO PROVE CONSTRUCTIVE TRUST.

Parol evidence is admissible to prove facts and circumstances constituting fraud from which a constructive trust arises.

4. VENDOR AND PURCHASER—PURCHASER NOT AFFECTED BY SECRET AGREEMENTS OF WHICH HE HAD NO NOTICE.

The bona-fide purchaser of a legal title is not affected by any latent equity founded either on a trust, incumbrance, or otherwise, of which he has no notice, actual or constructive.

5. VENDOR AND PURCHASER — "BONA - FIDE PURCHASER" MUST ACQUIRE TITLE BEFORE NOTICE.

To entitle one to the character of a "bona-fide purchaser" without notice he must have acquired legal title, and actually paid the purchase money before receiving notice of the equity of another.

6. VENDOR AND PURCHASER—UNRECORDED CONVEYANCES ARE VOID ONLY AS TO SUBSEQUENT PURCHASERS IN GOOD FAITH.

Under Rev. Laws, 1038, providing that instruments to convey real estate to operate as notice to third persons shall be recorded but shall be binding between parties thereto without such record, it is only subsequent purchasers in good faith against whom unrecorded conveyances are void, and a purchaser with actual notice is not a purchaser in good faith.

7. VENDOR AND PURCHASER—ONE ACQUIRING ESTATE WITH NOTICE OF EARLIER EQUITY HOLDS SUBJECT THERETO.

One who acquired a subsequent estate with notice of an earlier equity in favor of another will hold his acquisition subject and subordinate to such outstanding interest or right.

*Sardis Summerfield, M. B. Moore,* and *Hoyt, Norcross, Thatcher, Woodburn & Henley,* for Appellant:

In Moore v. Rochester Weaver Mining Co., 42 Nev. 178, this court said that where one comes into court of equity seeking equitable relief in aid of a legal title, the party must first establish his legal title, and where latter is doubtful, court will not grant relief.

Appellant was innocent purchaser without notice and entitled to benefit of her bargain as against secret equity, if any, of respondent. In United States the rule is that, where the estate subsequently purchased is legal estate, a notice, in order to be binding, must be received before purchaser pays price. A notice afterwards does not preclude him from completing transaction. 2 Pomeroy, Eq. Jur. (4th ed.), 1390.

The rule is applicable to one who has paid part of purchase price before notice of equity or claim. Carroll v. Johnston, 2 Jones, Eq. 120; Baggerly v. Gaither, 2 Jones, Eq. 80; Phelps v. Morrison, 24 N. J. Eq. 195. It is true that there is conflict in decisions as to protection afforded where only part of price is paid prior to receipt of notice of equities. The decisions above quoted give him the benefit of his bargain. A number of other decisions hold that he is entitled pro tanto,

the courts declaring he shall take portion paid for. Sparks v. Taylor, 6 L. R. A. (N.S.) 381, 390, 391.

Upon making contract for sale of land an equitable estate is created in purchaser, and vendee is looked upon as owner of land, his estate being commensurate with that provided by the contract. Fonts v. Foundery, 120 Pac. 960; 1 Pom. Eq. Jur. sec. 368.

Rev. Laws, 1038, specifically provides that, to operate as notice to third persons, the contract or instrument must be recorded with county recorder.

Where deed is absolute on its face, but intended as mortgage, recording of deed, but making no record of defeasance agreement, gives bona-fide purchaser absolute title free from equity of redemption. Gruber v. Baker, 20 Nev. 453.

A junior equity of equal merit will prevail prior equity when junior equity acquires legal title. 21 C. J. 208; U. S. v. Detroit T. Co., 50 L. Ed. 499.

If one, in addition to an equal equity, has also legal title, he will prevail irrespective of element of time. Rexford v. Rexford, 7 Lans. (N. Y.) 6; Newton v. McLean, 41 Barb. (N.Y.) 285.

A transaction will not be set aside in equity when its purpose was to defraud creditors or other innocent persons. Equity will leave parties as it finds them. O'Neal v. Fenwick, 64 S. W. 952.

The equity maxims as to clean hands and doing equity when seeking equity apply even where a stranger might suffer from misconduct. Bently v. Bibbals, 223 Fed. 247; 21 C. J. 180, 184.

*James T. Boyd*, for Respondent:

Appellant's petition for rehearing is simply new argument upon old state of facts; no errors or mistakes are pointed out. Rehearings are not granted as matter of right and are not allowed unless there is reasonable probability that court erred. 43 Nev. 78; 29 Nev. 89; 44 Nev. 468.

The only person who could question authority of Price to enter into agreement was the Washoe County Bank, and it does not question it.

The citations that counsel set out in their brief are good law, but not in point; in fact, they are as far from the point in issue as is assumption that bank was the owner. The lower court decided that Mrs. Moore secured the conveyance with full knowledge that bank was a mere trustee of legal title, that De Bernardi was equitable owner, and that bank had foreclosed mortgage and bought property for De Bernardi; and with that knowledge, in August, 1921, Mrs. Moore accepted the deed from the bank. She was not bona-fide purchaser without notice. 2 Pom. Eq. Jur. (4th ed.) 1488.

The citations by counsel deal only with priorities among equal equities, but the rule does not apply in this case. The bank had no equity at any time, hence could give none. Chadwick v. Arnold, 95 Pac. 527; Turner v. Turner, 125 Pac. 730.

In contest between persons having only equitable interest, priority of time is ground of preference last resorted to. If one has a better equity than the other, priority of time is immaterial. 1 Pomeroy, sec. 414.

This court has already answered the arguments set out in the petition: "The rule is established by a number of authorities that where one having an interest is induced to confide in the verbal promise of another that he will purchase for the benefit of the former at a sheriff's sale, and in pursuance of this allows him to become the holder of the legal title, a subsequent denial by the latter of the confidence is such a fraud as will convert the purchaser into a trustee ex maleficio," etc. Par. 10 of former opinion.

The best answer to the fraud charged in counsel's brief is the letter of Boyd in answer to the letter of Moore in which Boyd stated that he would meet Moore at any time and settle upon the amount due, and that De Bernardi would pay the amounts owed by him for the property.

By the Court, SANDERS, J.:

Counsel for appellant ask for a rehearing upon the following grounds:

"(1) That the evidence is insufficient to support the

finding of the court that Cheney, Downer, Price & Hawkins, or Robert F. Price, or either of them, were authorized as agent, or otherwise, to enter into the agreement with James T. Boyd on behalf of the respondent, Rick De Bernardi.

"(2) That the evidence is insufficient to justify the decision of the court in that the respondent, Rick De Bernardi, did not establish at the trial any legal title to the premises in controversy.

"(3) That this court erred in finding or assuming that appellant was the purchaser of the land in question with notice of the equity claimed by the respondent."

A response to the petition will serve the purpose of correcting what seems to be an erroneous impression of the facts and of strengthening the conclusions reached in our former opinion.

The case was tried in the court below, and presented here upon two issues—one, that the property in controversy was impressed with a constructive trust arising from the fraud of the Washoe County Bank; the other, that Kate Moore, the appellant, was not entitled to the protection of a subsequent purchaser without notice.

1-3. It is well settled that a constructive trust cannot be established by a mere preponderance of evidence, but must be established by evidence which is clear, definite, unequivocal, and satisfactory. 39 Cyc. 192; 3 Pom. Eq. Jur. (4th ed.) sec. 1058. Any evidence which tends to prove or disprove the fraud, actual or constructive, necessary to constitute a constructive trust, and which is not objectionable as to the relevancy, competency, and materiality of the evidence, is admissible. Parol evidence is admissible to prove the facts and circumstances constituting fraud from which a constructive trust may arise. 39 Cyc. 192.

The respondent's case was decided upon the application of these familiar principles. If there be any doubt as to the correctness of the conclusion of law that the breach by the Washoe County Bank of its promise or agreement to acquire the legal title to the property

and subsequently convey it to the respondent operated as such a fraud as to make the bank a trustee ex maleficio for the benefit of respondent, it arises from the credence and weight attached to the testimony of the witness James T. Boyd to prove the fraud necessary to constitute a constructive trust. We examined and have reexamined the testimony of the witness Boyd with very great care, realizing that the fraud constituting the trust was established only by his testimony, he occupying the dual position of witness and attorney in the cause. It is an unwritten law in the legal profession that an attorney may not be a witness in the cause he is conducting, except when essential to the ends of justice. Canon 19 of Professional Ethics of the American Bar Association.

It is conceded, or must be conceded, that the respondent's cause of action is grounded and built upon Boyd's testimony, but for whose evidence the cause of action might not have existed or have been maintained. Boyd became a witness in the case out of extreme necessity. Whether, under the circumstances, he should have withdrawn from the case and not have put forth all his skill as an advocate to maintain a cause of action of his own making is a matter which rests with Boyd and not with this court. Conceding the infirmative considerations attaching to his testimony because of his dual position as witness and attorney, the trial judge believed in the truthfulness of his testimony, acted upon it, and drew from it the conclusion of law that the Washoe County Bank's failure to keep faith with its promise made to Boyd to acquire the legal title to the property through the foreclosure of its mortgage and convey it to his client operated as such a fraud as to make the bank a trustee ex maleficio. The books are full of such cases. It is true the bank denied in its pleading that the agreement was authorized or ratified by it. This denial cast upon De Bernardi the burden of establishing by clear and convincing evidence the fact that the agreement was not only authorized but ratified by the bank. To maintain this issue Boyd testified to a conversation had

by him with Mr. Taylor, the cashier of the bank, before
the agreement in question was consummated between
Boyd and the bank's attorney, R. M. Price. It is not
charged that Boyd talked with Mr. Taylor, meaning
afterwards to swear to the conversation, and upon that
conversation found a right which otherwise his client
would not have had, but it is strongly urged by counsel
for the petitioner that Boyd's account of the conversa-
tion, standing alone and uncontradicted, does not show
that Boyd was authorized on the part of the bank to
make or to enter into the agreement he did with the
bank's attorney of record in its then pending action to
foreclose its mortgage on the property in question, and
to which action Rick De Bernardi was made a party
defendant with Constance Parker, the mortgagor.

If the cause of action were predicated solely upon the
alleged authority conferred on Boyd by the cashier
in the conversation as detailed by Boyd, we should be
inclined to agree with counsel, but, taking into con-
sideration Boyd's account of the entire transaction,
it appears that R. M. Price did not act upon the alleged
authority as given Boyd by the cashier. His testi-
mony tends to show that Price, before entering into
the arrangement as proposed by Boyd, visited, as any
prudent attorney would before obligating his client
to such an agreement, the office of the cashier of the
bank, and returned with the assurance that the arrange-
ment as proposed was agreeable and satisfactory to the
bank. Boyd's positive testimony certainly cast upon the
bank the burden of answering it.

In our former opinion we endeavored to make it clear
that Mr. Taylor's nonrecollection or failure to remember
ever having told Boyd that any arrangement he might
make with the bank's attorneys with reference to its
mortgage would be satisfactory to the bank did not
raise a conflict of evidence.

"Judges almost invariably hold that, as a matter of
course a witness's positive testimony to an oral decla-
ration, admission, or contract is not overcome by the
other party's testimony only to nonrecollection thereof,

or his denial that, 'to his recollection,' it was made, or his positive denial which dwindles down on cross-examination to mere absence of recollection. * * * " 2 Moore on Facts, sec. 1169, and authorities cited.

In applying this rule of evidence to the dispute or contradictions between the testimony of the witness Boyd and Mr. Taylor, we took into consideration that ordinarily a cashier of a bank, in the nature of things, by reason of his position and his duties, ought to have known whether he authorized or assented to an agreement affecting a bank's security, such as a mortgage. We have no doubt that Mr. Taylor was sincerely conscientious in impressing upon the trial court that, if he had at any time authorized the agreement, he would have recalled it. Mr. Taylor was fair enough with his adversary to state in the course of his examination that, if Mr. Price would say that he called upon him at the time and in the course of the transaction, as testified by Boyd, and obtained from him authority or his assent to the arrangement as proposed by Boyd, he would believe Mr. Price, as he considered him a truthful man. Mr. Taylor thus appealed to Price to support his position. If Price was available as a witness, the bank, in justice to Mr. Taylor and its defense, should have called him. The record shows that Price was available as a witness, but was not called. The bank's failure to call a witness who had full knowledge of the facts essential and material to its case creates an inference that the bank refrained from calling Price because his testimony would not aid its contention that the agreement in question was not authorized, ratified, acquiesced in, or confirmed by the bank. 16 Cyc. 1064.

In the present state of the record we cannot say that the agreement, made the basis of the respondent's cause of action, was not authorized and ratified by the bank. We therefore adhere to our former opinion upon this branch of the case with this observation upon the argument of counsel for petitioner: That the negligence of respondent in failing to obtain a written stipulation or written contract and to record the instrument

is wholly responsible for the position in which the respondent found himself. Rule 27, District Court Rules. We concede that this rule of practice requiring that stipulations between parties to causes not made in the presence of the court shall be in writing is a wholesome rule. Its policy is obvious. It points to the imminent danger of making the rights of parties in the conducting of a lawsuit depend upon the memory or the truthfulness of attorneys of record in the case. But in this instance the mischief had been done, and it is our duty to meet the case as it is presented by the record. Boyd's testimony as to the admission of material facts imputed to the bank stands uncontradicted. The testimony of Price, the opposing counsel of record, might have put a different color upon the verity of Boyd's testimony, but in the present state of the record it is not impeached.

The second ground urged upon us for a rehearing is not within any of the issues of the case, and we pass, therefore, to the consideration of the third and more serious objection to our former decision, namely, that we failed to protect Kate Moore's rights as a subsequent bona-fide purchaser against the claim or equity of respondent.

In support of this contention it is pointed out that the respondent did not come into the court of equity with clean hands, but with supplicant hands holding up a clandestine, secret agreement entered into by his attorney, James T. Boyd, with a mortgagee, for the purpose of securing an advantage over a mortgagor, Constance Parker, with whom the respondent was then in litigation over his claim or equity to the property because of an executory contract of sale, and thus acquire the legal title to circumvent the result of that litigation, should it terminate adversely to him.

4. The decisions are uniform that the bona-fide purchaser of a legal title is not affected by any latent equity founded either on a trust, incumbrance, or otherwise, of which he has no notice, actual or constructive. Brophy M. Co. v. B. & D. G. & S. M. Co., 15 Nev. 108.

For the purposes of rehearing it is conceded that Kate Moore had actual notice of the respondent's latent equity founded upon his agreement with the Washoe County Bank. This being true, she is in no position to question the motive of her adversary, but she insists that, conceding that she was a purchaser with notice, the proof shows that, before receiving notice, she had become a complete purchaser by having paid to her grantor the full purchase price, or what was tantamount in law thereto, and she was not, therefore, precluded from completing the transaction by obtaining a conveyance of the legal title, and thus secure the precedence due to a bona-fide purchaser for value and without notice. 2 Pom. Eq. Jur. (4th ed.) sec. 691.

The argument and the very authorities cited in the petition concede that there must be actual payment before any notice, or what in law is tantamount to actual payment, to entitle Kate Moore to protection. That a promise, contract, bond, and mortgage, or other non-negotiable security for the purchase price, will not render the party a bona-fide purchaser, nor entitle him to protection; for upon failure of the consideration he can be relieved from such obligations in equity, even if not at law. 2 Pom. Eq. Jur., sec. 751. Notice after the agreement for the purchase is made, but before any payment, will destroy the character of bona-fide purchaser. 2 Pom. Eq. Jur., sec. 750; 27 R. C. L., sec. 468, p. 703; 39 Cyc. 1763.

5. To entitle a party to the character of a bona-fide purchaser, without notice, he must have acquired the legal title, and have actually paid the purchase money before receiving notice of the equity of another party. Moresi v. Swift, 15 Nev. 215.

Was the purchase money paid before notice? The evidence, in our opinion, shows that it was not.

Kate Moore, as a witness in her own behalf, testified that she deposited with the Washoe County Bank, on or about June 3, 1920, $3,217 for one-half of the purchase price of the property in question. She admitted that her husband, M. B. Moore, acted as her agent in all

her transactions and negotiations for the purchase of the property. When we look to the testimony of her agent and husband, M. B. Moore, we find it was upon the 10th day of July, 1920, that it was finally agreed that Mrs. Moore would become the sole purchaser of the property, according to the terms and conditions then and there agreed upon. The deed which conveys the property to Kate Moore bears the date of the 22d day of July, 1920. This being the date of the conveyance pursuant to the agreement made on the 10th day of July, 1920, when, then, was the actual payment for the property made? In the course of his cross-examination, after having testified that the agreement to purchase was made on the 10th day of July, 1920, Mr. Moore was asked this question:

"Q. And if I understand you, then, on the 21st or 22d day of July is when the final agreement was finally entered into and consummated, is that correct? A. When the payment was made.

"Q. Well, that is when you finally determined on it, too, wasn't it? A. No; I think that the final arrangements were made some days preceding that."

The witness, in the course of his examination, stated that the payment under those terms, as he recollected it, was in the neighborhood of the 22d day of July, 1920.

M. B. Moore, as agent, as shown by the former opinion, received actual notice of the claim or equity of Rick De Bernardi, founded upon the agreement so much discussed, on the 19th day of July, 1920, three days before actual payment was made. Under these circumstances it cannot be claimed that the purchase money was paid before notice. Regardless, then, of the contract to purchase having been made before notice, both on principle and on a just consideration of the authorities, Kate Moore was not a complete purchaser before notice, and therefore not entitled to protection.

6. The petitioner further contends that she was entitled to protection as a bona-fide purchaser under the registry or recording statute (Rev. Laws, 1038). It is only subsequent purchasers in good faith against

whom unrecorded conveyances are void; and a purchaser with actual notice is not a purchaser in good faith of the estate previously conveyed. Gilson v. Boston, 11 Nev. 413.

7. We are urged to grant a rehearing for the further reason that in the present state of the record it affirmatively appears that the equities of the parties are shown to be equal, and that Kate Moore, having subsequently acquired the legal title to the property, thereby secured an advantage which entitled her to priority over the latent equity of Rick De Bernardi. This contention is set at rest by the application of the doctrine that, between an earlier equity and a subsequent legal estate, even when purchased for a valuable consideration, the one who acquires the subsequent estate with notice of the earlier equity in favor of another person will hold his acquisition subject and subordinate to such outstanding interest or right. This subordinating effect is produced from information given to an agent. 2 Pom. Eq. Jur., sec. 730.

No principle is better settled than that if A contract to sell land to B, but before consummating the sale conveys the same land to C, who has a knowledge of the preexisting contract, C is in equity bound to fulfil that contract. Stonecifer v. Yellow Jacket S. M. Co., 3 Nev. 38.

Rehearing denied.

DUCKER, C. J.: I concur in the order.

COLEMAN, J., concurring:

I concur in the order denying the petition for a rehearing. The grounds relied upon for a rehearing are set forth in the foregoing opinion of my learned associate. As to the first ground, there is absolutely no basis for it. Mr. Boyd gave positive testimony of the agreement relied upon. Mr. Taylor nor any one else could affirm or deny it. All that his evidence amounts to is that he did not recollect. This is strictly negative in character, and is entitled to no consideration. 10 R. C. L. p. 1010, sec. 202.

Mr. Taylor was willing to accept the evidence of Mr.

Price as to the fact. Mr. Price was the attorney for the bank, and it is a party to the suit, and is interested in the result. But the bank did not see fit to call him as a witness. In these circumstances the presumption is that the testimony of Mr. Price would have been in accord with that of Mr. Boyd, had he been called as a witness. Sherman v. S. P. Co., 33 Nev. 385, 402, 111 Pac. 416, 115 Pac. 909, Ann. Čas. 1914A, 287.

As to the second ground, it may be said that De Bernardi did not rely upon a legal title, nor did this court in its former opinion affirm the judgment upon that theory, but upon the theory that he established a title superior in equity to the title of appellant.

The third and last reason assigned for a rehearing is that this court erred in finding or assuming that appellant was a purchaser with notice of respondent's equity. To this contention I think it may be said that, in reaching the opinion which we did in the original opinion, we assumed nothing and made no finding, but, on the contrary, relied solely upon the findings of fact made by the trial court. In this connection, I think it sufficient to say that the trial court was fully justified under the evidence in making the findings which it did. As I read the record and the briefs, there are but two questions of fact presented. One I have alluded to, and the other is as to whether or not Mrs. Moore had notice of De Bernardi's equity prior to the consummation of the deal and the acquisition of title by her. My learned associate has stated the law on this point and invoked a former opinion of this court to buttress his position. As stated in that opinion—

"The purchase must be made in good faith, for a valuable consideration, and the purchase price must be wholly paid, and the conveyance of the legal title received before notice." Moresi v. Swift, 15 Nev. 215.

It is admitted that the deed passing the legal title to Mrs. Moore was not delivered for several weeks after the 22d of July. The court found that M. B. Moore, the attorney for Mrs. Moore, had actual notice of De Bernardi's equity on July 19, and that the purchase

money was not paid until the 21st or the 22d. In view of this finding the petition for rehearing must be denied, even though we were to assume that the long delay in the delivery of the deed is inconsequential.