## ED. J. SHUCK v. MISSOURI LUMBER & MINING COMPANY, Appellant.

### Division One, June 29, 1912.

1. **TAX SALE: Combination to Suppress Bidding.** An agreement between outside bidders at an execution sale not to bid against each other is good ground, when the agreement is operative, for setting aside the sale. But such an agreement to be available must be pleaded, and if not pleaded the admission of proof of it is reversible error in an appeal from a judgment setting aside the sale and deed.

2. ————: **Pleading: Alleging Tax Deed: General Denial.** A general denial to a petition charging that an illegal sale of plaintiff's land under a judgment for taxes was made, at which

defendant was the purchaser and received a sheriff's deed, is slovenly pleading, to say the least, for thereby defendant denied the existence of the deed; and when defendant filed such an answer and failed to introduce the deed in evidence, he can not complain of a decree setting the sale aside were it not for the fact that both sides tried the case on the theory that the sheriff's deed was in existence.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED.

*L. B. Shuck* and *Louis F. Dinning* for appellant.

*John W. McClellan* and *Ed J. Shuck* for respondent.

LAMM, J.—This is a suit in equity brought in the Shannon Circuit Court. From a decree for plaintiff, defendant comes up.

Plaintiff claims to own the southeast quarter of section 6, township 30, range 5, in Shannon county. He charges that an illegal sale was made under a judgment for taxes in the year 1899, at which sale defendant corporation was the purchaser and received a sheriff's deed. That the land was worth $800, that the taxes amounted to $3.53 with some interest and costs, and that the sheriff sold it in mass without subdivision as provided by the statutes, and for a grossly inadequate consideration. The bill shows that the judgment for taxes was against plaintiff's grantor. Alleging a willingness to pay defendant "the amount of its bill together with the cost of making the sheriff's deed" and charging that defendant claims some right, title or interest in the land adverse to the estate of plaintiff, he prays a decree setting aside the tax sale and that the court ascertain and determine the title and estate of plaintiff and defendant respectively.

The decree set aside the tax sale, adjudged plaintiff to be the owner of the land, that defendant had no right, title or interest in it and that it be forever barred from setting up any claim to the land or any part thereof.

Singularly enough, although defendant apparently claimed below to own the land and apparently claims here to own it through a tax sale, and the very one referred to in the bill, yet in its answer it denied "each and every allegation in said petition contained" except that relating to its incorporation—that is, *inter alia,* it denied there was a tax sale, it denied it received a tax deed and it denied that it made any claim of any right, title or interest adverse to the estate of plaintiff in the land. Wherefore, the law being rated as common sense, why should a litigant muddy its own drinking water, by aspersing or denying its own title, when its title is held in judgment? Such an answer, in a case where defendant claims to own the land under a tax sale and sheriff's deed, is not only slovenly but dangerous and illogical pleading.

At the trial plaintiff was allowed to prove that the representative and agent of defendant corporation, who attended the sale as a bidder on defendant's behalf (and who bid off the land), and another bidder in the tax title line, put their heads together covinously and agreed not to bid against each other at that sale. This evidence was unsuccessfully objected to and defendant excepted. There was testimony that these two bidders betimes selected the land they would bid on. Their arrangement is summed up by the following excerpt from the testimony: "The only agreement he and I had," said one of plaintiff's witnesses, "was with reference to buying; he (defendant's agent) was to stay off the lands I wanted and I was to stay off the lands he wanted; we made the agreement for the purpose of saving money in regard to buying land." Other testimony indicated that these two bidders, the only ones

shown to be there, in fact looked over the tax sale lists, and assumed to parcel out the spoils, agreeing not to invade each other's territory and not to bid against each other. It is also shown that they lived up to that agreement. We pause long enough to hazard the remark that, for that turn, the old Latin satirist (throwing his eye on these two agents) would have exclaimed, as he did on another occasion: *Par nobile fratrum!* It is shown that the land was worth two dollars per acre at the time, and that it was knocked down to defendant in bulk at sixty-one dollars under the sheriff's hammer.

There was testimony, also, that the 160 acres in suit, as was all other land sold then at tax sales in Shannon county, were sold in bulk without division and without an offer to divide or any request by the sheriff for bids on any subdivision of the land. There was testimony to the contrary. The chancellor well could have found one way or another on that issue. The finding and decree are general in terms and we cannot tell on what line of testimony the decree rests. We cannot say it rests on a sale in mass without an effort to get bids by the small or legal subdivision, and inability to do so—all this to the damage of the land owner; for the testimony, as said, is in conflict on that head. Presumably, since the court permitted evidence of a covinous contrivance between bidders to depress and chill the bidding by preventing competition (which sprung suddenly at the hearing without notice, was uncontradicted) that evidence was deemed material. If deemed material, as appears, then it produced, or vitally helped produce, the decree. Now, the testimony was not admissible and its admission was error. This, for reasons presently appearing.

We do not put our ruling on the ground that an agreement between outside bidders at an execution sale not to bid against each other, is not ground, and

good ground, when the agreement is operative, for setting aside the sale. The law in that regard is that the employment, on one hand, of by-bidders or puffers is reprehensible. Such devices and combinations to unduly and artificially stimulate bidding at public auctions are frowned upon by courts when found out. [2 Free. on Ex. (3 Ed.), section 298.] So, too, the law is that a combination to depress or chill the bidding, on the other hand, is reprehensible. Both schemes are birds of a feather and both have a fraudulent end of unjust enrichment in view. Devices to prevent competition and produce a sacrifice of the interests of the debtor or of both debtor and creditor, as may be, are held to be against public policy and highly immoral. They are disapproved of in both law and equity and the fruits of such covin are snatched away from the wrongdoers by the courts when it can be done. [*Ibid.*, section 297.] Says the same learned author in his treatise, Void Judicial Sales, sec. 40: ''To avoid the sacrifice likely to ensue, notices of sale are required to be given, the property is struck off to the highest bidder, and competition among the persons intending to bid is sought to be produced. But the bidders, on their part, may enter into combinations and devices, either with one another or the officer conducting the sale, by means of which competition is lessened or altogether avoided. Every scheme looking to this result is highly immoral, and will, if possible, be thwarted by the courts. The sale may be vacated, either by motion or by a bill in equity.''

The question was up in Stewart v. Severance, 43 Mo. l. c. 334 *et seq.* While the facts of that case are not the facts of this case, yet the trend of the doctrine of the Stewart case is in line with the quoted text.

There are exceptions to the rule. They arise, for example, where bidders are interested with one another in protecting liens, or where one cotenant bids for the rest, and so on. But such exceptions do not concern us

in the instant case. The general doctrine is one courts are fond of applying.

The trouble with plaintiff's case is that, under his bill as it now stands, he is not entitled to the benefit of the doctrine or to the admitted evidence; for he did not put his right to set the sale aside on any such ground in his bill. Neither by direct allegation or by inference is there a charge made in the bill that the sale was voidable or complained of because of a conspiracy or combination between bidders to depress or chill the bidding. It is axiomatic that things alleged and proved (*allegata et probata*) should correspond— the current of proof should be kept flowing within the marked out channel of the pleadings; for plaintiff may not sue on one and recover on another cause of action. When the case goes down, if he elect to amend his bill in that particular he may be entitled to the testimony, but not on his present bill.

There are other troubles. For instance, we find that though defendant relies on a sheriff's deed, it did not take the pains to introduce it in evidence. Wherefore? It may be that its counsel took the allegations of the bill relating to such deed as an admission on plaintiff's part that the deed was executed. But they have their own answer to reckon with in that regard. They denied the existence of the deed and with such an answer we have no call to assume one exists on the cold record here. In this view of the matter, if the case had not been apparently tried below (as it was) on the theory that a sheriff's deed was in existence which on its face duly conveyed the execution debtor's title to defendant, we would say defendant could with exceeding sorry grace complain of a decree destroying its claim to title—a claim denied by its solemn pleading.

The case was somewhat loosely tried and loosely pleaded, *nisi,* and somewhat loosely briefed here in several other respects, and we reverse the judgment and remand the cause in order that the parties litigant

may, if they choose, reform their pleadings and try their case anew and with care.

Other questions discussed by counsel, some of them grave, may or may not be raised again and we prefer to determine them, if so raised, or any others, when the case comes here if ever, on a proper and full record briefed as contemplated by our rules, so that we may do equity with all the facts before us and in the light of full briefs. We refer to such contentions as that the bill states no cause of action (raised here for the first time); to the question that plaintiff, being a purchaser after the tax sale, did not thereby acquire a standing and right to set the sale aside in equity, in other words, that such right was not a vendible thing, a question indifferently briefed by respondent and to be taken with the correlated fact that at the time of the tax sale one of the deeds in plaintiff's chain of title made before the sale, was kept off the record until after the sale.

Since this case was tried below, there have been decisions here throwing light on some of the questions involved in tax sales where the land is sold in a block. Counsel and court will have the advantage of those decisions at another trial. We think it better to express no opinion on them with the pleadings as they are now and the facts darkly developed.

Reversed and remanded. All concur.