# Hartzell *v.* Whitmore et al., Appellants.

*Trust and trustees—Trust ex maleficio—Sheriff's sale—Fraud by bidder—Declarations—Evidence—Equity.*

1. Where fraud, artifice or trick is resorted to to procure property at sheriff's sale at an under-value, the purchaser there takes as trustee for the person misled.

2. Parol declarations made by a purchaser at sheriff's sale, that he was bidding for another, are admissible to establish a trust for the person for whom the purchaser declared he was bidding.

3. A purchaser at a sheriff's sale will be declared a trustee for the defendants in the execution, where, prior to the sale, he stated that he would buy in the property for defendants, thereby preventing relatives from raising money to pay off the judgment, that at the sale he persuaded other persons not to bid by stating that he was buying for defendants, and by various other acts brought about a condition by which he was able to buy in the property greatly below its real value.

Argued September 23, 1921. Appeals, Nos. 25 and 26, Oct. T., 1921, by defendants, from decrees of C. P. Clarion Co., May T., 1920, Nos. 5 and 6, on bills in equity, in cases of Lena Hartzell v. A. H. Whitmore and John H. Hartzell v. A. H. Whitmore and J. H. Kahle. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bills in equity to declare a trust and to compel a reconveyance, and an accounting.   Before SLOAN, P. J.

The opinion of the Supreme Court states the facts.

The court entered a decree in accordance with the prayers of the bills.   Defendants appealed.

*Errors assigned,* among others, were decrees, quoting them.

*George F. Whitmer,* with him *F. J. Maffett* and *H. M. Rimer,* for appellant.—A promise to purchase at a sheriff's sale, for the benefit of the defendant in the execution, will not constitute a purchaser a trustee for him unless the purchase was made with the money of the defendant: Barnet v. Dougherty, 32 Pa. 371; Kellum v. Smith, 33 Pa. 158; Jackman v. Ringland, 4 W. & S. 149; Hoge v. Hoge, 1 Watts 163; Williard v. Williard, 56 Pa. 119.

The facts in the case of Kroft v. Smith, 117 Pa. 183, are much like the facts alleged in the case at bar.   See also Lancaster Trust Co. v. Long, 220 Pa. 499.

*A. A. Geary,* with him *H. E. Rugh* and *Don. C. Corbett,* for appellee.—The decree was proper: Faust v. Haas, 73 Pa. 295; Cook v. Cook, 69 Pa. 443; Blick v. Cockins, 234 Pa. 261; Turney v. McKown, 242 Pa. 565; Christy v. Sill, 95 Pa. 380; Barry v. Hill, 166 Pa. 344; Goodwin v. McMinn, 193 Pa. 645; Hamnett v. Trust Co., 223 Pa. 247.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1922:

Judgments had been recovered against plaintiffs, Lena Hartzell and John H. Hartzell, mother and son. These judgments were assigned to defendants, who caused executions to issue on them.   Two farms, one belonging to the mother and the other to the son, with the personal property thereon, were sold at the resulting sheriff's sales and purchased by defendants.   Subse-

quently these proceedings in equity were instituted by plaintiffs, the object of which was to have defendants declared trustees for complainants of the properties purchased at the sheriff's sales, to compel them to reconvey and to account for any property sold. The chancellor who heard the cases, which were tried together, found a trust existed in favor of each plaintiff and entered decrees as prayed for; from these decrees defendants appealed.

The facts shown on the trial fully warranted the conclusions of the chancellor and the remedial decrees resulting therefrom. It was established that, following the execution, another of Mrs. Hartzell's sons arranged with a bank to lend him the money necessary to liquidate the judgments against his mother and brother; when this was made known to defendant Whitmore, he advised that the arrangement should not be consummated, that he and defendant Kahle would buy in the property and hold it for the benefit of plaintiffs until they could raise the money to pay the indebtedness,— they, defendants, in the meantime, applying the proceeds of any property sold by them to the reduction of their claims.

On the day of, and preceding the first of, the sheriff's sales, both defendants were at Mrs. Hartzell's farm, and Whitmore told her that he would purchase all the property, real and personal, at the sheriff's sales for her and her son John, that the personal property would remain on the farms and, when he and Kahle were paid with interest, the farms and other property would be returned to her and her son. Whitmore made similar statements to John prior to the sale and the arrangement was repeated in the presence of the other defendant, Kahle. It was proven that at the sheriff's sales Whitmore dissuaded other persons from bidding, stating he was buying for the benefit of the defendants in the executions, and, as a consequence, he purchased everything sold at prices greatly below real values, except some of John's

articles, which were bid in by one of his brothers, who, in conformity with the understanding, turned them over to defendants, without paying anything on his bid. It was shown that the method of selling the personal property was not such as to command the best price, that in many instances, it was put up in lump, that the cattle were sold as a lot in a field a considerable distance from where the sale was taking place, and that the entire conduct of the sale was not such as would have taken place had not the defendants in the execution been lulled to sleep in protecting their interests. It also appeared that prior to the sale Whitmore learned that other sons of Mrs. Hartzell had labor claims against her and John; these he persuaded them to release, on the representation that he would buy in the property for the benefit of their mother and brother; for these releases no other consideration was received than this promise. Following the sale, John Hartzell continued to pay the taxes on the property and he and his mother stayed in possession. When demand was made on defendants for a reconveyance, they refused to comply.

Under the facts here appearing it would be manifestly unjust and inequitable to permit defendants, by deception, through which they procured appellee's property at a sum far below its real value, to covinously profit. They must now make good their undertaking to return it upon being paid their debt and interest. So long ago as 1829, in a case tried before Chief Justice GIBSON at nisi prius (Brown v. Dysinger, 1 Rawle *408), we laid down the rule that parol declarations, made by a purchaser at sheriff's sale, that he was bidding for another, are admissible to establish a trust for the person for whom the purchaser declared he was bidding. It was there said, "To......allow him to hold the land under such circumstances would be supporting a breach of trust and a fraud in law." In Cook v. Cook, 69 Pa. 443, we said, "Now it is perfectly clear that Phillip purchased [at sheriff's sale] for John and his conduct at the

sale preventing bidders and getting the property at a low price, far below its real value, would be a wilful and deliberate fraud, if he did not fulfil his agreement...... publicly acknowledged at the very moment of the purchase"; and in Faust v. Haas, 73 Pa. 295, we declared that where artifice or trick is resorted to to procure property at sheriff's sale at an under-value, the purchaser there takes as trustee for the person misled.

The learned chancellor who heard these cases correctly determined them and his decree in each is affirmed at the cost of appellants.