## LILLIE A. C. PYLE,

*vs.*

## BENJAMIN F. YAROWSKY AND REGINA YAROWSKY.

*New Castle, May* 10, 1929.

*E. Ennalls Berl*, of the firm of Ward & Gray, for complainant.

*Henry R. Isaacs* and *Ayres J. Stockly*, of the firm of Hastings Stockly & Morris, both of Wilmington, for defendants.

THE CHANCELLOR. The case presented by this bill is founded on the conception that the circumstances under which Dr. Yarowsky acquired title to the property are such as to raise a constructive trust in favor of the complainant. The trust if it exists as charged is grounded in a fraud. When a party acquires title to property through fraud practiced upon its owner, the law makes of him a trustee *ex maleficio*.

The particular fraud which the bill charges the defendant with having perpetrated consists in this—that Dr. Yarowsky by agreeing to buy in the property for the complainant, its owner, and to hold it on her account, lulled her into passivity and by

means of his conduct secured the property at a greatly under-valued price. The complainant through her solicitor cites the following authorities as supporting the contention that behavior of that kind reveals fraud of such a character that equity will recognize in it a proper ground for raising a trust in the aggrieved party's favor: *Robinson v. Cruzen, (Mo. App.)* 202 *S. W.* 449; *Dowling v. Doyle,* 149 *Ga.* 727, 102 *S. E.* 27; *Johnson v. Jameson, (Mo. Sup.)* 209 *S. W.* 919; *State ex rel. Cruzen v. Ellison,* 278 *Mo.* 199, 211 *S. W.* 880; *Moore v. De Bernardi,* 47 *Nev.* 33, 213 *P.* 1041, 220 *P.* 544; *Hartzell v. Whitmore,* 271 *Pa.* 575, 115 *A.* 840; *Ryan v. Dox,* 34 *N. Y.* 307, 90 *Am. Dec.* 696; 2 *Pomeroy's Equity Jurisprudence,* §§ 1053, 1055, 1056; *Perry on Trusts,* § 226.

If it were satisfactorily demonstrated that Dr. Yarowsky did in fact make the agreement with the complainant as alleged prior to the foreclosure sale, the authorities cited would be in point. But I have difficulty in concluding that he did. Before the sale Dr. Yarowsky never saw the complainant. If he made the agreement with her, he did so through her attorney. This attorney represented her at the time in a divorce proceeding. Later on, when the foreclosure sale was held, the same attorney represented Dr. Yarowsky for the purpose of placing bids in his behalf. If the testimony of the complainant be accepted, the attorney was representing her interests at the sale also. The attorney in question denies that he ever engaged to procure for the complainant a purchaser of the property who would buy it in and hold it for her account. Assuming, however, that he did so engage, does it follow that in his other role of attorney for the purchaser he was authorized to commit his purchasing client to the agreement that the title when acquired by him would be held for the benefit of the complainant? Unless the defendant expressly authorized his attorney to make such an agreement, I take it that he is not bound thereby, for the rule seems to be "that an attorney's authority to bind his client extends only to such acts and agreements as are necessary for the due prosecution of the cause or business in connection with which he has been employed; he has no implied power to bind his client by an agreement collateral to, and independent of, the subject-matter of his employment." 1 *Thornton on Attorneys at Law,* § 202. In

*Moore v. De Bernardi, supra*, the Supreme Court of Nevada stated that no argument is necessary to support the proposition thus formulated by Mr. Thornton.

There is nothing to be implied, therefore, from the attorney's retainer to attend the sale and bid the property in for Dr. Yarowsky, in the way of authority to bind Dr. Yarowsky to an agreement that he would hold the property for the complainant. The solicitor for the complainant takes the position that if Dr. Yarowsky's attorney knew of the alleged prior agreement that the property was to be bought in for the complainant, such knowledge must, under the principles governing the relationship of principal and agent, be attributable to Dr. Yarowsky. Granting this *argumenti causa*, I do not see its pertinency. Suppose the attorney who made the alleged engagement to secure a purchaser for the complainant had been some individual other than the one who also acted for Dr. Yarowsky, and suppose Dr. Yarowsky's attorney had been fully informed concerning such engagement, would the implied notice to Dr. Yarowsky in that case have the effect of imposing a trust on him as a means of effectuating the other attorney's promise? It is hardly to be thought so. So far as I can see, Dr. Yarowsky's position, if he never authorized his attorney to commit him to the agreement, is as unaffected by the knowledge which the particular attorney he employed had as if not that individual but some other one had made the promise to the complainant. The question is not one of knowledge or notice. It is one of agreement—Did Dr. Yarowsky agree through his attorney to assume the burden he is charged with?

Barring one piece of evidence, there is not one word to show that Dr. Yarowsky himself ever agreed to act as the complainant's agent or in her behalf in the purchase of the property. The doctor and his attorney both are emphatic in their denial that any such agreement ever was made. The complainant insists that the attorney made the agreement. Her testimony is that he promised to secure some one to bid in the property, but she does not claim that Dr. Yarowsky was ever named by the attorney as the person whom he would induce to act in the matter. The first knowledge that she had that Dr. Yarowsky was the individual who would act for her at the sale was, according to her testimony, obtained

a few days after the sale when she says Dr. Yarowsky and the attorney came out to the premises. She says that the attorney said, "Mrs. Pyle, this is Dr. Yarowsky; he bought the property in for you," and that Dr. Yarowsky confirmed the statement. This is the only testimony which tends to show that Dr. Yarowsky had agreed to act in her behalf. If true, it constitutes an admission by the defendant that he had in buying the property acted in the complainant's behalf in accordance with a previous arrangement made by her attorney. This testimony of the complainant is emphatically contradicted by both Dr. Yarowsky and his attorney. It seems strange that if when the defendant was told that the man whom she had just met, a complete stranger to her, had bought the property in for her, she did not make some inquiry concerning the terms and conditions upon which he was to hold the property. Yet the testimony fails to disclose any inquiry from her upon that important point. Nothing was then said concerning it and nothing has at any time since been said concerning it. Making all due allowance for the complainant's inexperience and conceding to her an extraordinary degree of simple confidence, it yet is incomprehensible to me why she did not upon meeting the individual who had agreed to act for her in saving her home, make some sort of inquiry touching the terms under which he was to hold the property and the conditions she had to meet in order to redeem it. Not only did she, according to her own statements, ask no questions, but, so far as her testimony discloses, she gave expression to no sentiment of thanks or gratitude for the kindness of her newly found benefactor. This sort of conduct may be consistent with the complainant's peculiar makeup, but it is not normal. Moreover, Dr. Yarowsky thereafter treated the property as his own and ordered the complainant to move from the bungalow to the large house, which she did without questioning his right to order her about. Certain repairs to plumbing were necessary and the complainant was told by the defendant to have a plumber make the repairs and have the bill sent to him. It would seem that at some time or other during these occurrences the complainant would have said something to Dr. Yarowsky about her rights and how they were eventually to be secured to her, if as she says he was holding the property for

her. Nor can I understand, looking at the matter from Dr. Yarowsky's point of view, why, if he confirmed the statement of the attorney alleged to have been made in his presence, viz., that he had bought in the property for the complainant, he did not explain to her the conditions upon which he would hold it. Surely, he could not in reason have been expected to agree to hold the property indefinitely on undefined terms. He is a man of considerable business experience. If the woman with whom he was dealing was so simple in her naivete as not to ask for terms, it is not reasonable to suppose that Dr. Yarowsky, who according to her statement had just confirmed his trusteeship, would have remained silent upon her obligations to him. The complainant remained in possession of a part of the premises and she points to that fact as corroborative of her statement that the property was being held for her. But Dr. Yarowsky says he allowed her to stay there rent free until he could rent or dispose of the property; that he allowed her this privilege out of sympathy for her and also in order to have a caretaker on the place pending its ultimate disposition. His directing her to move into the large house is harmonious with this statement. His explanation is acceptable as satisfactorily rebutting any adverse implications arising out of the complainant's occupancy of the premises.

On the whole I conclude not only from the positive denials of the defendant and his attorney, but as well from the acts and conducts of the parties since the sale, that Dr. Yarowsky did not a few days after the sale confirm the statement of his attorney that he, Dr. Yarowsky, had bought in the property for the complainant.

This conclusion leaves the situation as follows: The only theory upon which the complainant can rest her case is that the attorney agreed with her that he would secure some one to buy in the place for her and that because Dr. Yarowsky became the purchaser through this attorney as his agent, he must be regarded in law as having been a party to the agreement. There is no showing that at the time the alleged agreement was made, the attorney in question represented Dr. Yarowsky. Indeed the only evidence on the point is to the contrary. The extent of the authority to Dr. Yarowsky's attorney which is derivable from

the evidence is only that which inheres in his employment to bid at the sale. That authority cannot, in the absence of express authorization, be extended so as to authorize the attorney to bind his client to an agreement to hold the property in trust for the execution debtor. *Moore v. De Bernardi, supra; Thornton on Attorneys, supra.* See, also, *Wabash, St. L. & P. Ry. Co. v. Mc-Dougall,* 126 *Ill.* 111, 18 *N. E.* 291, 1 *L. R. A.* 207, 9 *Am. St. Rep.* 539; *Chicago General Ry. Co. v. Murray, et al.,* 174 *Ill.* 259, 51 *N. E.* 245; *Ratican v. Union Depot Co.,* 80 *Mo. App.* 528; *Wonderly v. Martin,* 69 *Mo. App.* 84. There being no evidence of express authorization to the attorney to make the alleged agreement and the weight of the evidence failing to support the claim that the defendant had admitted being a party to the agreement, I conclude that the complainant's case as it is framed by the bill has not been supported.

There is one other phase of this case which has given me much concern and which I feel impelled to advert to before concluding this opinion. I refer to the development in the evidence of certain facts which if true constitute a serious charge against the attorney to whom reference has been frequently made throughout this opinion. That attorney is a member of the Chancery bar and hence the court feels constrained to take notice of the matter referred to. Testimony was adduced to the effect that the attorney in question stated to another bidder at the sale that he, the attorney, was bidding the property in for Mrs. Pyle, the defendant in the foreclosure and the complainant here; that such statement induced the rival bidder to refrain from running up the price and that had it not been for such statement the complainant's property would have sold for more. If this conduct took place, it was unethical and constituted a serious wrong to the complainant. It may be that if the bill were drawn on the theory that the sale of the complainant's property was chilled by the statement of the agent of the purchaser, whereby the property was struck off at an undervaluation, even though the purchaser himself was no party to the chilling statement, yet equity would in the interest of a public policy which seeks to secure free and fair sales and to protect the property of execution debtors from sacrifice, hold the purchaser to an accounting to the person

wronged. See *Cocks v. Izard*, 7 *Wall.* 559, 19 *L. Ed.* 275; *Slater v. Maxwell*, 6 *Wall.* 268, 18 *L. Ed.* 796; *Shuck v. Missouri Lumber & Mining Co.*, 244 *Mo.* 366, 148 *S. W.* 609; *Fenner v. Tucker*, 6 *R. I.* 551. I refrain, however, from expressing an opinion on that point because the bill as now framed does not admit of its consideration. If it did, the point not having been raised by the solicitors, I should feel bound to afford the parties an opportunity to argue it. The present bill is framed upon the theory that a trust was created by a contract. I do not see how it would be permissible for the court under such a bill to base its decree upon another sort of case, which the proposition above suggested would present. The case made by the proof must conform to the case made by the bill.

The pending bill must, therefore, be disposed of adversely to the complainant. But the question of the conduct of the attorney at the sale remains a subject which, as before stated, cannot be ignored. It must be looked into. While the court doubtless has power *sua sponte* to institute proceedings looking to possible disciplinary measures against a solicitor even to the extent of disbarment, yet I am of the opinion that if action of this kind is to be taken in this case, the appropriate committee of the bar should be called upon to investigate and report to the court its recommendation in the premises. The Censor Committee of the New Castle County Bar will therefore be requested to examine the testimony taken in this cause and any other evidence relevant to the propriety of the conduct of the attorney in question and make a report to the court with a recommendation.

Decree for the defendant in accordance with the foregoing.