## Rizzetto v. F. W. Wint Co., Inc.

*James L. Weirbach*, for plaintiff.

*Weaver & Weaver*, for defendant.

HENNINGER, P. J., December 24, 1963.—Plaintiffs, husband and wife, filed an amended complaint in equity praying ". . . That the defendant be held accountable to acknowledge by instrument of record its parol declaration of holding the premises subject of this action subordinate to the lien of a mortgage to Easton Federal Savings & Loan Association; and that the judgment to No. 1021 January Term 1962 be declared null and void and defendant ordered to account to plaintiffs for all sums of money or items of personalty of the plaintiffs now being held by it; and that the Court grant such other and further relief as the plaintiffs may be entitled to receive in the premises."

The circumstances are that on July 27, 1961, plaintiffs purchased land and on August 9, 1961, entered into a construction agreement with Starcu Construction

Company (Starcu) and on September 20, 1961, executed a stipulation against liens which was filed on September 22, 1961. On November 15, 1961, one Sorrentino furnished materials and labor on said project. On December 15, 1961, a construction mortgage for $13,000 to Easton Federal Savings & Loan Association (Easton) was executed which was recorded December 18, 1961. On February 20, 1962, plaintiffs executed a judgment note to Starcu for $4,179, payable 365 days after date, on which judgment was entered on March 12, 1962. On April 25, 1962, Sorrentino filed a mechanic's lien against the property for $1,610, claiming priority from September 3, 1961, the date Sorrentino fixed as that of the first visible construction on the premises. A scire facias was issued on said mechanic's lien and judgment entered without contest, although on March 20, 1962, Easton had been notified of Sorrentino's threatened lien; on November 7, 1962, a levari facias was issued on Sorrentino's judgment and a sale scheduled for December 19, 1962, was postponed to January 25, 1963, when the premises were sold to defendant for $5,200, who obtained and enforced a writ of possession against plaintiffs and sold their personal property in partial satisfaction. Only $1 was realized of the balance of its judgment.

This proceeding was begun on June 18, 1963, and is based upon the fact that at the sheriff's sale on January 25, 1963, Peter P. Perry, attorney for Easton, announced that the property would be sold subject to Easton's mortgage, the attorney for the execution creditor and the attorney for defendant conceded that that would be so and defendant's attorney agreed to bid on that theory and told another prospective and actual bidder that the lien of the mortgage would not be divested. The $5,200 bid for the property was distributed by the sheriff upon that theory, the first money, after costs and taxes, going to Sorrentino and the bal-

ance to defendant in partial satisfaction of its judgment. Defendant, when asked to execute a bond to Easton, refused to do so.

After reciting the above facts, plaintiffs state:

"Defendant's conduct prior to, during, and subsequent to the Sheriff's Sale of plaintiffs' premises, through its agents, duly authorized, was an attempt by artifice to circumvent provisions of the Mechanics' Lien law in order to gain a preference as a creditor of plaintiffs in excess of the value of labor and materials delivered to plaintiffs' premises for construction use; and to forestall bidding at Sheriff's Sale of plaintiffs' premises and gain for it, the defendant, the speculative advantage of windfall profit by effective disclaimer of liability on an oral promise to assume the indebtedness of the plaintiffs with respect to the real estate thus purchased . . ."

Several points are to be noted: (1) No one questions the validity of the lien upon which the sheriff's sale was based; (2) no one challenged the validity of the sheriff's sale; (3) no one excepted to the schedule of distribution; (4) plaintiffs do not deny owing Starcu the money represented by defendant's judgment note or that Starcu owed defendant that much money, although defendant did not furnish that amount of unpaid goods or labor for use in construction of plaintiffs' property; (5) defendant's refusal to assume responsibility for payment of plaintiffs' debt to Easton is not inconsistent with its purchase of the property subject to Easton's mortgage; (6) whether or not counsel present at the sheriff's sale were correct in their interpretation of the law relating to the discharge of liens, defendant would be estopped to deny its purchase subject to Easton's mortgage; (7) plaintiffs' only prejudice would be their continued liability on their bond to Easton should defendant allow it to go into default; (8) the levy on plaintiffs' personal property was made more than 365

days after execution of the judgment note; (9) plaintiffs do not make any point that the confession of judgment was conditional upon maturity of the note and, therefore, defendant's judgment cannot be stricken off.

While plaintiffs in their amended complaint no longer ask to hold defendant as trustees, they cite Hartzell v. Whitmore, 271 Pa. 575, on that subject. The Hartzell case bears no resemblance to this one. In that case, the purchaser at a sheriff's sale assured defendants *prior to sale* that he would purchase *for them* and the court held him to that assurance.

Nor is Delaware County National Bank v. Miller, 303 Pa. 1, apposite. In that case, a sale was set aside upon a petition filed six days after the sale and, therefore, before delivery of the deed. Plaintiffs, with full knowledge of what occurred, have allowed the time to pass for objections to the sale.

As we read plaintiffs' prayer for relief, they ask defendant to state in writing that they hold the property subject to the Easton mortgage. We greatly doubt our power to compel defendant to execute such a writing, but, as noted below, we can, in a proper case, adjudicate that the property was so purchased, especially where, as here, defendant orally concedes that this is so.

We can treat this bill in equity as an action to quiet title. Pennsylvania Rule of Civil Procedure No. 1061-(b) (3) provides as follows:

" (b) The action may be brought . . . (3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; . . ."

Plaintiffs clearly have an interest in determining that defendant holds title subject to the mortgage, for in that case there is security for their continuing obli-

gation on the bond, whereas if the lien of the mortgage was divested by the sale, they are liable for the entire amount of the bond, with no security to mitigate their possible loss.

We express no opinion upon the correctness of the proposition that the lien of the mortgage was not divested upon execution on a mechanic's lien claiming a date of commencement of work upon the land prior to recording of the mortgage. But see Reynolds v. Miller, 177 Pa. 168, 173.

It is clear, however, that parties can by stipulation, agreement or acquiescence in a public announcement cause the divestiture of a lien or the subjection at sheriff's sale to an otherwise divested lien: Stackpole v. Glassford, 16 S. & R. 163, 167; Tower's Appropriation, 9 W. & S. 103, 105.

Plaintiffs have stated a case which, if proved, would vest title in defendant subject to the Easton mortgage. Prodded by the court on earlier preliminary objections they have overstated their case. To leave the mortgage undivested, there need be no "artifice" or conspiracy. There need be only a general understanding and acquiescence on the part of those present at the sheriff's sale. Since persons absent from the sale knew nothing of this understanding, neither they nor plaintiffs were prejudiced. It is very likely that plaintiffs benefitted by sale subject to the mortgage, since, otherwise, any bidder would have had to finance the entire purchase price.

We find no fault in defendant's unwillingness to execute an assumpsit bond with Easton. Plaintiffs have no right to demand that defendants indemnify them, but only that the pledged real estate be held and eventually applied to the mortgage debt. We are not now concerned with any possible future deficiency judgment upon the mortgage bond.

Plaintiffs have asked relief beyond that to which they are entitled, but this is a common failing to which

courts and litigants are enured and to which parties need not plead. Nevertheless, plaintiffs' amended complaint contains so many allegations that have no bearing upon the question of sale subject to the mortgage that we feel compelled to require a new pleading directed solely to that part of the prayer for relief that relates to that subject.

We might also suggest that it should be possible to execute and record an instrument indexed against defendant, the present owner, acknowledging that the property is held subject to the Easton mortgage, without defendant assuming responsibility on the bond and without indemnifying plaintiffs.

Now, December 24, 1963, defendant's preliminary objections are sustained, plaintiffs' amended complaint is ordered stricken, the action is referred to the law side of the court as an action to quiet title, and plaintiffs are directed to file an amended complaint in accordance with this opinion within 20 days after service of this opinion upon their counsel.